**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CINDY MOLL,**

                                        **Plaintiff,**

**v.**
                                                                        **04-CV-0805S(Sr)**

**TELESECTOR RESOURCES GROUP, INC.,**

                                        **Defendant.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1)(A), for all pretrial matters, and for hearing and disposition of all non-dispositive motions or applications.  Dkt. #15.

Currently before the Court are plaintiff's motion (Dkt. #20), to compel and defendant's motion (Dkt. #25), to quash a subpoena.  For the following reasons, plaintiff's motion to compel is granted in part and denied in part.  As the parties have advised the Court that they have resolved defendant's motion to quash a subpoena, this motion is denied as moot.

## BACKGROUND

Plaintiff has been employed at Telesector Resources Group, Inc., d/b/a Verizon Services Group, since 1990.  Dkt. #1, ¶ 8.  She was promoted to the position of Systems Analyst in 1997 and continued her employment without incident until sometime in 1998, when a co-worker, Daniel Irving, began to sexually harass her.  Dkt. #1, ¶¶ 17-20.  Plaintiff also alleges that she was subject to disparate treatment during her pregnancy and denied promotion upon

her return from maternity leave.  Dkt. #1, ¶¶ 21-27.  Daniel Irving continued his sexual

harassment of plaintiff upon her return from maternity leave and following his promotion to

Sales Engineer Manager, at which time he became plaintiff's direct supervisor.  Dkt. #1, ¶¶ 28-

35. Plaintiff alleges that male external candidates were hired over qualified internal candidates

and afforded preferential compensation packages and that women were denied

accommodations and opportunities that were afforded to male employees .  Dkt. #1, ¶¶ 35-44,

47, 50, 54, 58-60.  She also alleges that defendant found alternative positions for male

employees who were not performing their jobs and meeting their goals.  Dkt. #1, ¶ 58.


Plaintiff commenced this complaint alleging hostile work environment; disparate

treatment on the basis of sex; retaliation following her complaints of discrimination; and violation

of the Equal Pay Act.  Dkt. #1.  By Decision and Order entered September 29, 2005, the Hon.

William M. Skretny, U.S.D.J., dismissed plaintiff's claim of hostile work environment; limited

plaintiff's disparate treatment and retaliation claims to allegations occurring after November 22,

2002; and limited plaintiff's Equal Pay Act claim to allegations occurring after October 4, 2001.

Dkt. #13.  The parties have executed a confidentiality agreement.


## DISCUSSION AND ANALYSIS

Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged,
> that is relevant to the claim or defense of any party . . . .  For good
> cause, the court may order discovery of any matter relevant to the
> subject matter involved in the action.  Relevant information need
> not be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

"The key phrase in this definition–'relevant to the subject matter involved in the pending action'–

has been construed broadly to encompass any matter that bears on, or that reasonably could

lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"However, pursuant to Rule 26(c), the court may limit discovery even if the information sought is relevant." *Tisby v. Buffalo General Hosp.*, 157 F.R.D. 157, 170 (W.D.N.Y. 1994); *Coyne v. Houss*, 584 F. Supp. 1105, 1109 (E.D.N.Y. 1984).  Fed. R. Civ. P. 26(c) provides, in relevant part, that the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Moreover, "[t]he management  of discovery lies within the sound discretion of the district court, and the court's rulings on discovery will not be overturned on appeal absent an abuse of discretion."  *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998); *see Robertson v. National Basketball Ass'n*, 622 F.2d 34, 35-36 (2d Cir. 1980) ("Protection against unnecessary discovery is discretionary with the trial court and will be reversed only on a clear showing of abuse of discretion.").

Document Request No. 1

Plaintiff seeks the "personnel file or any personnel document, in whatever form(s) ever maintained including, but not limited to, office and personnel files, supervisory files, training files, Human Resources files, and/or any separate file materials and/or computer tape and/or computer stored personnel record maintained on" fourteen named individuals, including plaintiff, and any other individual who held the position of Sales Engineer (Level I, II, III or IV), Sales Engineer Manager, and Technical Sales Support in the Buffalo Officer of the Enterprise Solutions Group from 2001 to present, "including, but not limited to, performance evaluations, pay records, discipline records, work histories, training and experience records, transfer, promotion, and/or demotion records and review materials."

Defendant states that it has provided the personnel files for potential comparators and for plaintiff's supervisors, but denies any obligation to produce personnel records for six individuals who have never supervised plaintiff or worked as a sales engineer with her. Dkt. #30, pp.8-10.  Specifically, defendant asserts that Mark Van Hoesen, Branch Vice President for Verizon Business (formerly known as the Enterprise Solutions Group), was three management levels above plaintiff, managed a sales region spanning three states, and never directly supervised plaintiff's daily activities.  Dkt. #30, p.10, n.5.  Defendant asserts that Christoper Sacco and Robert Dixon each held the position of Branch Sales Engineering Manager, which was two management levels above plaintiff and encompassed a sales region spanning three states, but never involved direct supervision of plaintiff's daily activities.   Dkt. #30, p.10, n.5.  Defendant also asserts that: Michael Finnegan held the position of Project Manager, which involved distinct job duties from plaintiff and reported to a different manager than plaintiff; Don Donahue held the position of Branch Sales Engineering Manager, then became a Regional Sales Manager working in Syracuse and Albany, but never supervised plaintiff; and that Ray Brogan held the position of Corporate Account Manager and neither supervised plaintiff nor reported to the same supervisor as plaintiff.  Dkt. #30, p.10, n.5.

Plaintiff replies that it is appropriate for plaintiff to discover the personnel records of individuals subject to the same supervisors and decision-makers as plaintiff and to discover the personnel records of those individuals who were the decision makers for plaintiff.  Dkt. #33, p.4.   Plaintiff argues that Mark Van Hoesen, Christopher Sacco, Don Donahue and Robert Dixon "either supervised plaintiff or participated in discriminatory and retaliatory decisions with respect to plaintiff."  Dkt. #23, p.8; Dkt. #34, p.5.  With respect to Ray Brogan and Michael Finnegan, plaintiff argues that "these individuals were subordinate to the same decision-makers whom Plaintiff alleges discriminated against her" and that these individuals received preferential treatment because they are male.  Dkt. #23, p.8; Dkt. #34, p.5.

Plaintiff also argues that it appears that defendant has failed to disclose all of the information contained within the personnel files it has produced, as defendant has not disclosed any mid-year evaluations as part of any of the personnel files it has disclosed to plaintiff.  Dkt. #34, p.6.

The Court agrees with defendant that plaintiff's demand for confidential personnel records of individuals outside of plaintiff's job classification and several management levels above her direct supervisor is overly broad.  Accordingly, this aspect of plaintiff's motion to compel is denied.  However, defendant shall certify to plaintiff that it has disclosed the complete personnel files of those individuals whose personnel files have been disclosed.

Interrogatory Request No. 4

Interrogatory Request No. 4 seeks information regarding the same fourteen named individuals, including plaintiff, such as: date of hire; gender; position for which the individual was hired; qualifications; name of direct supervisor; name of supervisor who hired individual; employment history; current job title and responsibilities; disciplinary record; date of termination; any application for promotion by the individual; and the result of any such application.

Defendant argues that because the personnel files contain the information sought in the interrogatory, it can rely upon the production of the personnel files to satisfy it's obligation to respond to the interrogatory.  Dkt. #30, p.11.  "Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . . it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and

to make copies, compilations, abstracts or summaries."  Fed. R. Civ. P. 33(d).   Accordingly, the

defendant is only required to respond to the interrogatory to the extent that the information

sought is not contained within the personnel files produced.  Since the Court is not requiring the

defendant to produce the contents of the personnel files for all of the individuals requested in

Document Demand No. 1, the defendant shall be required to respond to this interrogatory with

respect to those individuals.


Document Request No. 6

Plaintiff seeks "[a]ny and all documents, including, but not limited to any notes,

memoranda, correspondence or e-mails with respect to the interviewing and hiring of Kevin

Dean, David Winley, and Daniel Irving for the EATSS [Enterprise Advance Technology Solution

Specialist] position."


Defendant argues that information regarding the hiring of Kevin Dean and David

Winley is not relevant to plaintiff's claims because plaintiff admits that she did not apply for

either of these positions.  Dkt. #30, p.13.


Plaintiff responds that this information is relevant to her claim that men were

hired for positions for which they were not qualified, thereby demonstrating intent to

discriminate.  Dkt. #30, p.13.  Plaintiff also notes that the TSS positions were subsequently

converted to Sales Engineer positions and alleges that Mr. Dean and Mr. Winley were

converted into a higher level of Sales Engineer than their qualifications would merit.  Dkt. #33,

p.5.  With respect to Mr. Irving, plaintiff asserts that he was transferred to this position

subsequent to her allegations of discrimination and harassment.  Dkt. #33, p.6.

The Court accepts defendant's representation that there are no responsive documents regarding Dan Irving's transfer into the EATSS position.  Dkt. #30, p.14.  With respect to Mr. Dean and Mr. Winley, however, the defendant is directed to produce the documents demanded in this document request.

Document Request No. 10

Plaintiff seeks "[a]ll W-2 Statements, Form 1099, and other Internal Revenue Service forms for the period from January 1, 2001, to the conclusion of this action," for seven named individuals, including plaintiff, and "all employees in any group which Plaintiff was a member including, but not limited to, any person holding the positions of Sales Engineer (Level I, II, III or IV), Sales Engineer Manager, and Technical Sales Support in the Buffalo Office of the Enterprise Solutions Group."

Defendant argues that its disclosure of base salaries of potential comparators and of the performance-based incentive compensation program is sufficient for purposes of her Equal Pay Act claim.  Dkt. #30, pp.14-15.  Defendant notes that the performance-based incentive compensation program is dependent upon the sales group meeting its group sales quota.  Dkt. #30, p.15.  As the Equal Pay Act does not prohibit employers from imposing wage differentials based upon "a system which measures earnings by quantity or quality of production," defendant argues that any compensation paid pursuant to the performance-based incentive compensation program is irrelevant to plaintiff's claim.  Dkt. #30, p.17.  As a result, defendant argues that disclosure of W-2 statements and 1099's is unnecessary.  Dkt. #30, p.17.

Plaintiff argues that it is impossible to compare her earnings to comparable employees without these records.  Dkt. #33, p.7.

The Court agrees that the W-2's or 1099's of comparative employees are relevant to plaintiff's claims and notes a distinction between the production of W-2's and 1099's and the production of tax returns.  Defendant shall respond to this document demand.

Interrogatory No. 1

Plaintiff seeks disclosure of W-2 income; annual base salary; bonus and commissions for 15 named individuals, including plaintiff, and any individual who held the position of Sales Engineer (Level I, II, III or IV), Sales Engineer Manager and Technical Sales Support in the Buffalo Office of the Enterprise Solutions Group from 1997 to the present.

Defendant shall respond to this interrogatory to the extent that the information sought in this interrogatory is not contained within the W-2's or 1099's produced in response to Document Demand No. 10.

Document Request No. 14

Plaintiff seeks "[a]ll documents, including, but not limited to, any memoranda, correspondence, report or record of or concerning the positions of Sales Engineer (Level I, II, III or IV), Sales Engineer Manager, and Technical Sales Support in the Buffalo Office of the Enterprise Solutions Group, including but not limited to, any job posting, internal or external, or any solicitation in any manner, files maintained for each position, postings for each position, assessment of each applicant for the position, selection criteria for interviews and hiring for

each position, notification of interview, selection, interview notes, and/or rejection for each

position, and payroll records reflecting the salaries, compensation and/or benefits paid to

individuals for said positions from January 1, 2001, to the conclusion of this action."

Defendant argues that plaintiff is not entitled to this information because she did

not apply for any such positions during the time period at issue in her complaint.  Dkt. #30,

p.18.

Plaintiff responds that "the discriminatory network which was in place prevented

her from being able to apply for many of these positions" and contends that "many of these

positions were not posted and thus women such as Plaintiff were denied the opportunity to

apply for them."  Dkt. #33, p.7.

The Court agrees that the information requested is relevant to plaintiff's claims.

Accordingly, defendant shall respond to this document demand.

<u>Interrogatory No. 8</u>

Interrogatory No. 8 seeks information regarding the same occupation titles in the

Buffalo and Syracuse Sales Offices during plaintiff's employment with defendant, including: the

number of openings for each position; salary; job description as set forth in writing and in

practice; the identity of the individuals responsible to screening, interviewing and hiring for

these positions; name, address and telephone number for individuals employed in such

positions; dates of employment; gender; qualifications; prior experience in that position;

employment history prior to being hired in those positions; and salary, compensation packages,

raises bonuses, and promotional opportunities.

Defendant shall respond to this interrogatory to the extent that the information sought in this interrogatory is not contained within the documents produced in response to Document Demand No. 14.

Document Request No. 15

Plaintiff seeks "[a]ll documents regarding the distribution of all business accounts, including but not limited to, any funnels, and tables, graphs or charts containing Sales Engineer primary and secondary (backup) account designations, for persons holding the position of Sales Engineer (Level I, II, III or IV), Sales Engineer Manager, and Technical Sales Support for Voice Customer Premise Equipment/PBX in the Buffalo Office of the Enterprise Solutions Group, including but not limited to, Sales Engineer specialty assignments and Sales Engineer Funnels, from January 1, 2001, to the conclusion of this action, including but not limited to funnels used in or about September 2002, at the meeting in Buffalo attended by Mark Van Hoesen, Donald Donahue and Chris Sacco."  Dkt. #23, No. 15.

The Court accepts defendant's representation that it has "fully responded to Plaintiff's requests for these materials and produced all responsive documents that it could locate after a reasonable search."  Dkt. #30, p.19.  Accordingly, this aspect of plaintiff's motion to compel is denied.

Document Request No. 16

Plaintiff seeks "[a]ll documents relating in any way to opportunities provided by Defendant to employees of the Buffalo Office of Enterprise Solutions Group to socialize with clients, including but not limited to, corporate policies, events planned, schedules of events,

types of events, employees invited to attend events, who attended each event, and

reimbursement for the cost of events, including but not limited to, complaints by employees in

the Buffalo Office of the Enterprise Solutions Group relative to opportunities to attend events

and/or socialize with clients, from January 1, 2001, to the conclusion of this action, including but

not limited to any lists maintained by Maureen Rasp-Glose for Buffal Bills ticket[s], Buffalo

Sabres tickets, Shea's Buffalo tickets and tickets distributed for any other social events."


       The Court accepts defendant's representation that it has "fully responded to

Plaintiff's requests for these materials and produced all responsive documents that it could

locate after a reasonable search."  Dkt. #30, p.19.   Accordingly, this aspect of plaintiff's motion

to compel is denied.


Document Request No. 23

       Plaintiff seeks "Sales Engineer Ranking files from 2001, and continuing until the

conclusion of this action, for the support personnel (Sales Engineers, Project Manager, SBSS)

who provided support for the Buffalo, Rochester, and Syracuse accounts, including, but not

limited to, any ranking of Plaintiff and other support personnel which occurred in the summer of

2005, including the criteria upon which the ranking was based."


       The Court accepts defendant's representation that it has complied with this

request in full by producing a handwritten document authored by Sales Engineer Manager Chris

Gaglione, which it states is the only document it has located which is responsive to this request.

Dkt. #30, p.12.  Accordingly, this aspect of plaintiff's motion to compel is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel (Dkt. #20), is granted in part and denied in part.  As the parties have advised the Court that they have resolved defendant's motion to quash a subpoena, this motion (Dkt. #25), is denied as moot.


**SO ORDERED.**


DATED:        Buffalo, New York
              September 28, 2007


                              **  s/ H. Kenneth Schroeder, Jr.  **
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

-12-