**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CINDY MOLL,**

                           **Plaintiff,**

v.                                            **04-CV-0805S(Sr)**

**TELESECTOR RESOURCES GROUP, INC.,**

                           **Defendant.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1)(A), for all pretrial matters, and for hearing and disposition of all non-dispositive motions or applications. Dkt. #15.

Currently before the Court is plaintiff's motion to compel or, in the alternative, precluding defendant from using any document sought by plaintiff in defense of this case for failure to disclose such document or, in the alternative, imposing an adverse inference upon defendant and requiring payment of reasonable expenses, including attorneys' fees relating to this motion. Dkt. #83. For the following reasons, plaintiff's motion to compel is granted in part and denied in part and the remainder of plaintiff's motion is denied.

## BACKGROUND

Plaintiff commenced employment with defendant in 1990. Dkt. #57, ¶ 8. She was promoted to the position of Systems Analyst in 1997 and continued her employment without incident until sometime in 1998, when she alleges that a co-worker, Daniel Irving, began to sexually harass her. Dkt. #57, ¶¶ 9 & 17-20. Plaintiff also alleges that she was subject to disparate treatment during her pregnancy and denied promotion upon her return from maternity leave. Dkt. #57, ¶¶ 21-27. Daniel Irving allegedly continued his sexual harassment of plaintiff upon her return from maternity leave and following his promotion to Sales Engineer Manager, at which time he became plaintiff's direct supervisor. Dkt. #57, ¶¶ 28-32. Plaintiff alleges that male external candidates were hired over qualified internal candidates and afforded preferential compensation packages and that women were denied accommodations and opportunities that were afforded to male employees. Dkt. #1, ¶¶ 33, 35-44, 47, 50, 54-55, 59-61.

Plaintiff filed an Amended Complaint on April 17, 2008, alleging that subsequent to the commencement of this action, she was advised that the Buffalo Sales Engineers and the position of Project Manager held by Michael Finnegan were being transferred to Syracuse. Dkt. #57, ¶ 65. The Branch Sales Engineer Manager, Robert Dixon, was permitted to remain in Buffalo, even though there was no one for him to supervise in that office. Dkt. #57, ¶ 70. Plaintiff alleges that she was not permitted to work from home even though other Sales Engineers in the Syracuse office were permitted to do so and was subjected to different reporting requirements than

other Sales Engineers in Syracuse. Dkt. #57, ¶¶ 72-75 & 80-81. Robert Dixon allegedly issued negative references for three internal positions to which plaintiff applied and ranked her "least desirable" among her coworkers. Dkt. #57, ¶¶ 76 & 79.

Plaintiff went out on disability leave in September of 2005, returning in March 2006 to the Buffalo office under the supervision of Sales Engineer Manager Mark Witte. Dkt #57, ¶¶ 82-85. She was assigned to the M&T Bank Project, one of the highest revenue accounts in the office. Dkt. #57, ¶¶ 85 & 96. M&T was so pleased with plaintiff's performance that they requested that plaintiff be assigned to their account full time. Dkt. #57, ¶ 86.

On February 9, 2007, plaintiff was advised that her position had been eliminated as part of a reduction in force. Dkt. #57, ¶ 97. Plaintiff alleges that she was the only Sales Engineer eliminated in the Buffalo, Rochester, Syracuse or Albany offices. Dkt. #57, ¶ 98. Plaintiff claims that her termination was based upon gender discrimination and retaliation for her complaints of discriminatory and retaliatory conduct. Dkt. #57, ¶ 99.

As limited by the Decision and Order of the Hon. William M. Skretny, plaintiff's complaint asserts claims for disparate treatment on the basis of sex and retaliation for the period between November 22, 2002 and her termination and violations of the Equal Pay Act for the period between October 4, 2001 and her termination. Dkt. #13. The parties have executed a confidentiality agreement.

## DISCUSSION AND ANALYSIS

Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"The key phrase in this definition–'relevant to the subject matter involved in the pending action'– has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"However, pursuant to Rule 26(c), the court may limit discovery even if the information sought is relevant." *Tisby v. Buffalo General Hosp.*, 157 F.R.D. 157, 170 (W.D.N.Y. 1994); *Coyne v. Houss*, 584 F. Supp. 1105, 1109 (E.D.N.Y. 1984). Fed. R. Civ. P. 26(c) provides, in relevant part, that the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Moreover, "[t]he management of discovery lies within the sound discretion of the district court, and the court's rulings on discovery will not be overturned on appeal absent an abuse of discretion." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997), *cert. denied*, 525 U.S. 936 (1998); *see Robertson v. National Basketball Ass'n*, 622 F.2d 34, 35-36 (2d Cir. 1980) ("Protection against unnecessary discovery is discretionary with the trial court and will be reversed only on a clear showing of abuse of discretion.").

Third Request for Production of Documents - Request No. 1

Plaintiff seeks "all documents regarding the merger of MCI and Verizon . . . on or about January 2006 and business decisions as a result thereof which in any way relate to Plaintiff's job including but not limited to those related to her position, title, assignments, duties and responsibilities, customers, work location, reporting structure (large business and government/education) and compensation and/or benefits." Dkt. #85, p.7. Defendant argues that this demand is impermissibly broad and notes that it has "produced all documents related to the actual merger that in any way could be tied to Plaintiff." Dkt. #87, p.14. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No. 2

Plaintiff seeks "all documents concerning the determination that Plaintiff be relocated, on or about February 2006, to the downtown Buffalo office, and direction that Plaintiff no longer be within the Robert Dixon, Mark Van Hoesen reporting structure." Dkt. #85, pp.7-8. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. Specifically, defendant states that it has produced "an organizational chart reflecting the structure of Verizon Business following the merger that resulted in Ms. Moll's job (and the jobs of others) being placed at a former MCI office in Amherst." Dkt. #87, p.8.

Plaintiff argues that there must have been memorandums or directives regarding this relocation and some documentation regarding reporting structure. Dkt.

#84-6, p.3. Defendant states that "there was no specific, individualized determination relating to Plaintiff's work location assignment following the company-wide restructuring of a combined 210,000 employees that followed the Verizon-MCI merger." Dkt. #87, p.8. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No. 3

Plaintiff seeks "[a]ll documents of or concerning the assignment of Sales Engineers a/k/a Solutions Engineers in the Buffalo, Rochester and Syracuse sales offices to business segments (i.e. Government/Education) during the period January 2005 through the present." Dkt. #85, pp.8-9. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. Specifically, defendant states that it "does not use documents to assign business segments or product/industry specialties to sales engineers." Dkt. #87, p.8. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No. 5

Plaintiff seeks the "personnel file or any personnel document" of Greg Shelton; Greg Mar[ag]li[a]no; Mari[]sa Ovadis; Tom Elks; Randy Longhenry; and any individual who held the position of sales engineer a/k/a solutions engineers in all segments of Verizon Business located in the Buffalo, Rochester, and Syracuse reporting structures." Dkt. #85, pp.9-10. Plaintiff argues that Greg Shelton, Greg Maragliano and Marissa Ovadis are each comparators to plaintiff. Dkt. #85, p.10.

Plaintiff also argues that Tom Elks and Randy Longhenry were within the same reporting structure as plaintiff and in a position in which plaintiff would have been promoted had she remained employed by defendant. Dkt. #85, p.10. Plaintiff agrees to limit the request for personnel files of sales engineers to the time frame of January 1, 2007 through the present. Dkt. #85, p.11. Defendant responds that there is no basis for demanding the confidential employment information of non-parties working in the Syracuse and Rochester offices. Dkt. #87, pp.5-6.

The Court agrees that there is no basis for the disclosure of confidential personnel records of employees in other offices. Plaintiff's claim that she was subjected to different reporting guidelines than other Sales Engineers in the Syracuse office cannot support her claim of discrimination on the basis of sex or retaliation for complaining about such discrimination, as she alleges that Michael Chase, another Sales Engineer transferred from the Buffalo office, was also subjected to the more onerous reporting guidelines. Moreover, plaintiff's discovery demands indicate that the Sales Engineers in Syracuse subject to preferential reporting guidelines included both men and women. Finally, defendant does not dispute plaintiff's allegations that Sales Manager Robert Dixon assigned products within plaintiff's product specialty to Sales Engineer Greg Shelton in Syracuse without requiring him to report to the Buffalo office, and the Court does not discern the relevance of his personnel files to this undisputed fact. Dkt. #57, ¶¶ 88-89 & Dkt. #87, p.6. As a result, this aspect of plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.6

Plaintiff seeks vouchers for all expenses for all sales engineers a/k/a solutions engineers in all segments of Verizon Business located in the Buffalo, Rochester, and Syracuse [offices] from January 2004 through February 2007." Dkt. #85, p.11. Defendant argues that this demand lacks relevance to the allegations set forth in her amended complaint and is overbroad. Dkt. #87, p.14. Plaintiff argues that this demand is relevant to her allegations that male sales engineers received "certain job perquisites" which she was denied. Dkt. #85, p.11.

The Court agrees that this demand is relevant to plaintiff's allegations that she was subjected to different terms and conditions of employment than similarly situated male employees, including customer positioning events and socialization with clients, such as football and hockey games and charity golf tournaments. Dkt. #57, ¶¶ 15-16, 21-22, 54 & 59. However, this request will be limited to sales engineers within the Buffalo office. Accordingly, defendant shall produce documents revealing expenses paid for sales engineers a/k/a solutions engineers working on accounts in the Buffalo office to attend customer positioning or social events, including sporting and charitable events, from January 2004 through February 2007, within 30 days of this Decision and Order.

Third Request for Production of Documents - Request No. 7

Plaintiff seeks "all documents of or concerning the M&T Bank account during the period it was assigned to Plaintiff beginning on or about March 2006 through

on or about February 2007 including, but not limited to, correspondences, emails, memos, monthly meeting notes, contracts, and work assignments." Dkt. #85, p.11. Defendant argues that this request is overbroad and notes that plaintiff has declined to identify specific documents. Dkt. #87, p.15. Plaintiff argues that she is seeking to "substantiate her results for this account" and demonstrate that her termination was not based upon performance. Dkt. #85, p.12. Defendant shall produce, within 30 days of the entry of this Decision and Order, any documents reflecting plaintiff's work on the M&T bank account between March 2006 and February 2007.

Third Request for Production of Documents - Request No. 8

Plaintiff seeks "all documents of or concerning product/industry specialties relative to sales engineers a/k/a solutions engineers and how accounts were assigned relative to such specialties to sales engineers a/k/a solutions engineers from January 2006 through the present." Dkt. #85, p.12. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. Specifically, defendant notes that it "does not use documents to assign business segments or product/industry specialties to sales engineers." Dkt. #87, p.8. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.9

Plaintiff seeks "all documents of or concerning the assignment of sales engineers a/k/a solutions engineers in the Buffalo, Rochester and Syracuse area to offices; requirement that sales engineers a/k/a solutions engineers report to assigned

offices; hours of work required to be performed at assigned office by sales engineer a/k/a solutions engineer; and hour[s] or worked allowed to be performed at places other than assigned office such as home office, client location office, employer office other than assigned office." Dkt. #85, p.13. Defendant notes that it has "produced e-mails to and from Plaintiff that relate to this request." Dkt. #87, p.9.

Plaintiff complains that the request was not limited to the assignment of plaintiff to these offices. Dkt. #85, p.14. Plaintiff also argues that "someone must have made the decision to relocate these individuals." Dkt. #84-6, p.5. Defendant notes that Robert Dixon and Mark Van Hoesen were deposed in this action and explained their decision to transfer employees to Syracuse and that it has "produced all documentation that it possesses regarding the Syracuse job transfers." Dkt. #87, pp.3-4. Defendant states that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.10

Plaintiff seeks "all documents of or concerning the work location of Robert Dixon and Daniel Irving, from 2004 through the present." Dkt. #85, p.14. Plaintiff argues that it seems obvious that "any change in such work location would be documented." Dkt. #84-6, p.5. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its

possession no responsive documents" to this request. Dkt. #87, p.7. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.12

Plaintiff seeks "all documents of or concerning the requirement that sales engineers a/k/a solutions engineers add new accounts to his/her module during January of 2005 through the present including, but not limited to, the requirement that Plaintiff add ten new accounts to her module by the end of 2006; the actual new accounts added by sales engineers a/k/a solutions engineers to their modules during January of 2005 through the present." Dkt. #85, p.15. Defendant notes that it has "already produced the written document that required Ms. Moll to add new accounts by the end of 2007, as well as a written document that imposed the same requirement on a male co-worker." Dkt. #87, p.11. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.13

Plaintiff seeks "[a]ll documents demonstrating the assignment of accounts to sales engineers a/k/a solutions engineers in the Buffalo, Syracuse and Rochester area during January of 2005 through the present including, but not limited to, new accounts, old accounts, and the criteria for the assignment of such accounts." Dkt. #85, p.15. Plaintiff argues that this request is relevant to her allegations that other sales engineers were being assigned accounts that should have been assigned to her,

-11-

thereby limiting her ability to add new accounts. Dkt. #85, p.16. Defendant notes that it "does not assign accounts to sales engineers via specific documents." Dkt. #87, p.11. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.15

Plaintiff seeks "[a]ll contracts and account assignments to account managers, sales managers, sales/solution engineers, TSS, or any other sales/sale engineer support employee, sales/solution engineers managers, branch managers, in the business sector handled in the Buffalo, Rochester, Syracuse and Albany offices from January of 2005 through the present including but not limited to M&T Bank, Royal Bank of Canada, Bank of Montreal, Merchants Mutual Insurance, SUNY Buffalo, BOCES, Erie County, Niagara County, City of Buffalo, and the Buffalo Board of Education." Dkt. #85, p.16. Defendant argues that this request is over broad and notes that it "does not possess contracts for account managers, sales managers, sales/solution engineers, TSS, and other sales/sale engineer support employees, sales/solution engineer managers, and branch managers because these positions are all at-will employment positions." Dkt. #87, p.12. Plaintiff replies that "she is seeking account assignments of various accounts."

To the extent that defendant maintains documents indicating which account managers, sales managers, sales/solution engineers, TSS, and other

sales/sale engineer support employees, sales/solution engineer managers, and branch managers were assigned to the accounts set forth above from January of 2005 through the date of her termination, defendant shall produce such documents, or state that no such documents exist, within 30 days of the entry of this Decision and Order.

Third Request for Production of Documents - Request No.16

Plaintiff seeks "[a]ll documents demonstrating the chain of command for the Verizon Business Sales group responsible for the Buffalo, Rochester, Syracuse, Albany and Pittsburgh sales offices." Dkt. #85, p.17. Defendant responds that it has already produced documents demonstrating the organizational structure of the Verizon Business Sales Group. Dkt. #87, p.17. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.18

Plaintiff seeks "all documents demonstrating the scheduling of any sales appointments during the period January of 2006 through February of 2007, by Sales Managers, Corporate Account Managers, and sales engineers a/k/a solutions engineers including, but not limited to, hand written calenders, computer maintained calenders, and weekly conference call notes." Dkt. #85, p.18. Plaintiff argues this request is relevant to her allegations that she was being excluded from sales appointments. Dkt. #85, p.18. Defendant argues that the request is overbroad and, to the extent that she alleges that her sales manager, Robert Dixon, was excluding her from sales appointments, defendant lacks access to his calendars, appointment books or notes as he left employment with defendant two years prior to plaintiff's request for

documents. Dkt. #87, p.15. The Court agrees that plaintiff's request for documentation of sales appointments for any corporate account managers with whom plaintiff could have worked is overbroad and unlikely to lead to the discovery of admissible evidence. As a result, this aspect of plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.20

Plaintiff seeks "all documents of or concerning a reduction in force on or about February of 2007." Dkt. #85, p.19. Defendant notes that it has "produced internal e-mails regarding the reduction in force, plus spread sheets identifying the 170 employees who were impacted by the reduction in force." Dkt. #87, p.12. Plaintiff argues that "no documents have been produced reflecting the basis for the decision to terminate Ms. Moll during this reduction in force (as opposed to any other Verizon employee)." Dkt. #84-6, p.6. Defendant responds that it "has performed a reasonable search and has already produced all responsive documents, or has in its possession no responsive documents" to this request. Dkt. #87, p.7. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Request for Production of Documents - Request No.21

Plaintiff seeks "all documents of or concerning any position, including but not limited to sales engineer a/k/a solutions engineer, eliminated as a result of the reduction in force in the Buffalo, Rochester, Syracuse, or Albany offices during the period January of 2004 through the present." Dkt. #85, p.19. Defendant argues that this request is "overly broad and unduly burdensome in that it is not limited in geographic or temporal scope" and notes that "[d]ocuments related to the reduction-in-

force that impacted Ms. Moll have been produced." Dkt. #87, p.16. Plaintiff argues that this time frame is necessary to determine whether the methodology utilized during the reduction in force which terminated plaintiff is consistent with prior and subsequent reductions in force. Dkt. #85, pp.19-20. Plaintiff also argues that it is necessary to obtain information for the other offices to ensure that the methodology utilized was consistent throughout offices. Dkt. #85, p.20. The Court finds it irrelevant whether the criteria utilized for a reduction in force preceding or following the reduction in force which terminated plaintiff was similar or distinct. Accordingly, this aspect of plaintiff's motion to compel is denied.

Third Set of Interrogatories – Interrogatory No. 1

Plaintiff seeks the W-2 information, including base salary, bonus, and commission, from 1997 to present for 20 named individuals, as well as any individual who held the position of sales engineer a/k/a solutions engineer in all segments of Verizon Business located in Buffalo, Rochester and Syracuse and for any individual who held the position of Sales Engineer (Level I, II, III or IV), Sales Engineer Manager, and Technical Sales Support in the Buffalo Office of the Enterprise Solutions Group. Dkt. #85, p.21. Defendant notes that it has agreed to provide the requested W-2 reported income "for employees within the same job title and working at the same work location as Plaintiff within thirty (30) days of the Court's ruling on summary judgment, to the extent that any of Plaintiff's claims survive and such documents would be needed for a damages phase at trial." Dkt. #87-2, p.36. Plaintiff requests that this agreement be set forth in an order. Dkt. #85, p.21. Plaintiff's request is granted.

Third Set of Interrogatories – Interrogatory No.2

Plaintiff asks for the name of the manager(s) who: (1) decided "to remove plaintiff from the Robert Dixon, Mark Van Hoesen reporting structure" in February 2006; (2) assigned plaintiff to "the downtown Buffalo office" in February 2006; (3) assigned plaintiff to the M&T Bank account; and (4) discussed the M&T Bank account as one of the top sales for 2006 at a Branch meeting in January 2007. Dkt. #85, p.22. Defendant responded that

> as part of the combination of the former MCI and Verizon Enterprise Solutions Group teams, Plaintiff was assigned in 2006 with other employees to report to Sales Engineer Manager Mark Witte, whose geographic area of responsibility included Buffalo and Canada. As part of that assignment, she was directed to report to an office in Buffalo, and later in Amherst. Mr. Witte assigned Plaintiff to the M&T Bank account and, while he doesn't have specific recollection of doing so, may have commended Ms. Moll for her work with M&T Bank at a Branch meeting . . . .

Dkt. #84-5, p. 7. Defendant states that it does not possess any additional information regarding the identity of managers who made certain reporting requirements. Dkt. #85-2, p.7. Defendant responds that it has responded to this interrogatory "based on the information currently available to it." Dkt. #87, p.18. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Set of Interrogatories – Interrogatory No.4

Plaintiff seeks identification of "Plaintiff's product specialty, Greg Shelton's product specialty and dates of any facts refuting plaintiff's allegation that "Robert Dixon, Sales Manager had assigned products within Plaintiff's product specialty to male Sales Engineer, Greg Shelton." Dkt. #85, p.22. Defendant responded that

> in or about 2007, both Plaintiff and Mr. Shelton were
> considered to possess skills related to incumbent local
> exchange carrier services ("ILEC services"). Verizon further
> states that Mr. Dixon was aware that Plaintiff . . . desired to
> avoid contact with Mr. Dixon. To the extent that Mr. Dixon
> assigned work to Greg Shelton that Plaintiff believes should
> have been assigned to her, Mr. Dixon did so in consideration
> of Ms. Moll's expressed desire to "avoid contact" with Mr.
> Dixon.

Dkt. #84-5, p.8. Defendant responds that it has responded to this interrogatory "based on the information currently available to it," noting that the "primary holder of the information Plaintiff seeks is no longer an employee of Verizon and departed the Company two years before Plaintiff tendered this request." Dkt. #87, p.18. In reliance upon this representation, plaintiff's motion to compel is denied.

Third Set of Interrogatories – Interrogatory No.5

Plaintiff seeks identification of all accounts and clients Plaintiff was assigned and Greg Shelton was assigned while Mark Witte was Plaintiff's Sales Manager." Dkt. #85, p.23. Defendant responds that Mark Witte was never a Sales Manager and that Plaintiff should know the accounts to which she was assigned while Mr. Witte was her sales engineering manager. Dkt. #87, p.19. Defendant argues that it is not relevant what accounts were assigned to Greg Shelton while Mr. Witte was her Sales Engineering Manager because plaintiff's allegations are that Mr. Dixon – not Mr. Witte – assigned products in her specialty to Mr. Shelton. Dkt. #87, p.19. Given plaintiff's allegations with respect to Greg Shelton, defendant shall respond to this interrogatory by identifying all accounts and clients Plaintiff and Greg Shelton were assigned from March 2006 through plaintiff's termination in February of 2007 within 30 days of the entry of this Decision and Order.

Sanctions

Although plaintiff suggests that defendant has failed to produce a multitude of documents which a sophisticated company such as defendant would be expected to have generated in the regular course of restructuring and managing their business, the Court has no basis to discount defendant's representation that it has performed a reasonable search and produced any documents responsive to plaintiff's demands. Should defendant attempt to utilize documents which were responsive to plaintiff's demands but not produced in discovery as evidence during the course of dispositive motions or trial, the trial court judge is in the best position to consider the appropriateness of sanctions.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel (Dkt. #83), is granted in part and denied in part. Plaintiff's motion for sanctions, including preclusion, adverse inference and attorneys' fees, is denied.

**SO ORDERED.**

DATED:    Buffalo, New York
              November 16, 2010

                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**