UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CINDY MOLL,

                              **Plaintiff,**

v.                                                                04-CV-0805S(Sr)

**TELESECTOR RESOURCES GROUP, INC.,**

                              **Defendant.**

---

## **DECISION AND ORDER**

        This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1)(A), for all pretrial matters, and for hearing and disposition of all non-dispositive motions or applications. Dkt. #15.

        Plaintiff's second amended complaint alleges disparate treatment on the basis of sex; a hostile work environment; and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq*., as well as violations of the Equal Pay Act, 29 U.S.C. § 206 *et seq*. Dkt. #148.

        By motion filed November 6, 2015, plaintiff requested an expedited hearing for an order pursuant to Rule 65 of the Federal Rules of Civil Procedure temporarily restraining Allstate Insurance Company from complying with a subpoena duces tecum issued by the defendant until a hearing could be conducted with respect to

plaintiff's request for an order permanently quashing the subpoena seeking records from plaintiff's current employer, Allstate Insurance Company. Dkt. #169. More specifically, the subpoena seeks:

1. Plaintiff Cindy Moll's personnel file.

2. All documents - to the extent not included in the personnel file - relating to:

    A. Compensation paid to Plaintiff Cindy Moll since her date of hire;

    B. Employee benefits provided to Plaintiff Cindy Moll since her date of hire;

    C. Any training Plaintiff Cindy Moll received regarding how to investigate and recognize fraudulent attempts to secure insurance benefits.

Dkt. #169-3, p.29.

In support of the motion, plaintiff argues that the confidential information that defendant seeks from plaintiff's current employer is either duplicative of information which has already been produced or irrelevant to plaintiff's claims of sex discrimination and retaliation against Verizon. Dkt. #169-1, pp.1-2. Specifically, plaintiff declares that she has already produced her W-2 statements and benefit information to defendant. Dkt. #169-2, ¶ 18. Plaintiff notes that Verizon claims that plaintiff was terminated as part of a reduction in force, not because of her performance. Dkt. #169-1, p.2. Plaintiff argues that a subpoena of employment records from her current employer is nothing more than a fishing exhibition designed to harass and intimidate plaintiff and negatively affect her current employment. Dkt. #169-1, p.3 & Dkt. #169-2, ¶ 21.

By Text Order entered November 9, 2015, the Court granted the motion to quash defendant's subpoena *duces tecum* of Allstate Insurance Company. Dkt. #174.

Defendant objected to the Text Order on November 23, 2015. Dkt. #176.

By Text Order entered November 30, 2015, Judge Skretny denied the objections as premature and directed the undersigned to provide a basis for its Text Order granting the motion to quash defendant's subpoena *duces tecum*. Dkt. #178.

As an initial matter, the Court notes that plaintiff has a legitimate privacy interest in information regarding her current employment and therefore has standing to bring this motion to quash. *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010).

"The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998); See *Warnke*, 265 F.R.D. at 66. As amended in 2015, Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."  In addition, pursuant to Fed. R. Civ. P. 45(c)(3)(B)(i), "a court may quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information." *Syposs*, 181 F.R.D. at 226.  Whether a subpoena imposes an undue burden depends upon consideration of "relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire v. Kaplan*, 760 F. Supp.2d 288, 293-94 (E.D.N.Y. 2011).  While the burden of demonstrating relevance is borne by the party seeking discovery, *Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 41 (S.D.N.Y. 1992), the burden of persuasion on a motion to quash a subpoena is borne by the movant. *Sea Tow Int'l v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007).  The decision whether to quash or modify a subpoena is committed to the sound discretion of the trial court. *Libaire,* 760 F. Supp.2d at 291.

Verizon argues that the subpoena is necessary because plaintiff has failed to produce sufficient documentation to support the amount of damages she seeks for lost wages and benefits. Dkt. #176, pp.11-12.  For example, Verizon argues that plaintiff's W-2 information does not distinguish between base pay, discretionary bonus, incentive compensation and overtime compensation, which Verizon claims to need in order to evaluate whether plaintiff's potential earnings at Allstate are in fact lower than her earnings at Verizon.  Dkt. #176, p.12.  Verizon further argues that plaintiff has failed

to produce any documentation regarding her enrollment in any group medical plan at Allstate, the monthly premium for such plan, the proportion of the premium paid by Allstate versus plaintiff and the amount of her deductible. Dkt. #176, p.13. Verizon argues that plaintiff has similarly failed to provide any documentation related to her enrollment in Allstate's dental, vision, disability and retirement plans, which Verizon needs in order to compare the value of such benefits to the benefits offered by Verizon. Dkt. #176, p.13. Finally, Verizon argues that records evidencing plaintiff's use of a company vehicle, laptop computer or cell phone are relevant to the proper calculation of damages. Dkt. #176, p.13. Verizon argues that the absence of such information has hampered the ability of its expert witness to formulate and render a reliable and accurate opinion regarding plaintiff's purported lost wages and benefits. Dkt. #176, pp.13-14. As a result, Verizon argues that plaintiff left Verizon "with no choice but to seek such information directly from Plaintiff's employer." Dkt. #176, pp.13-14.

The information Verizon seeks, while relevant to plaintiff's claim of damages, should be available from plaintiff through routine discovery. *See Warnke*, 265 F.R.D. at 70 (defendant is not entitled to obtain compensation information directly from plaintiff's employers, but must obtain the information from less intrusive means where possible). To the extent that Verizon demanded such information from plaintiff through interrogatories or requests for production of documents, but failed to receive adequate responses, the appropriate remedy is a motion to compel disclosure or preclude evidence of damages. *Id.* at 70 & n.3 (defendant should have "explored the means available to obtain information from current employers and then come to the

Court with an appropriate application if the information was lacking instead of proceeding with the subpoenas). The Court notes that the parties have yet to disclose their expert witnesses or complete expert discovery and surmises that plaintiff will be unable to substantiate her claim for damages without support from such an expert witness, who can be questioned at deposition as to his or her consideration of such plaintiff's compensation package in calculating plaintiff's damages. While plaintiff cannot be permitted to avoid substantiating her claim of lost wages and reduced benefits, defendant has not justified burdening plaintiff's current employer or risking plaintiff's continued employment with the issuance of this subpoena. As "courts within the Second Circuit have recognized, . . . [b]ecause of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort." *Warnke*, 265 F.R.D. at 69 (Internal quotation omitted); *See Henry v. Morgan's Hotel Group, Inc.,* 5-CV-1789, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quashing subpoenas based on "legitimate concern" that subpoenas could adversely affect plaintiff's future prospects for employment if potential employers discovered that plaintiff had brought a lawsuit for discrimination); *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791, 2003 WL 115221, at *2 (S.D.N.Y. Jan. 10, 2003) (granting motion to quash because the Rule 45 subpoenas served on firms with which plaintiff worked before and after her termination "would subject plaintiff to unnecessary annoyance and embarrassment within the meaning of Rule 26(c)).

Verizon argues that plaintiff's job application, performance reviews and disciplinary and attendance records are relevant to its counterclaims for fraud. Dkt. #176, p.14. Verizon alleges that although plaintiff returned to work following her maternity leave on a gradual return to work schedule in 2001, due to a payroll processing error, Verizon paid plaintiff as if she was working full-time. Dkt. #176, p.3. When confronted with an overpayment of $10,602.45, plaintiff claimed that she did not realize she was overpaid. Dkt. #176, p.3. In addition, Verizon alleges that during a nine month period in 2005-2006 when plaintiff collected short-term disability benefits, she was attending an accelerated degree program at Medaille College and earned a Bachelor's degree. Dkt. #176, pp.2-3. Verizon argues that it is entitled to know whether plaintiff made any misrepresentations to Allstate, such as lying on her job application or taking a fraudulent leave of absence, as such evidence would enhance its position that she engaged in similar conduct at Verizon. Dkt. #176, p.14. The Court finds any such evidence inadmissible and irrelevant to defendant's ability to prove its counterclaims. *See Henry*, 2016 WL 303114, at *4 (even if defendant's speculation as to plaintiff's lack of truthfulness was warranted, evidence from non-party employers would likely be inadmissible propensity evidence under Rule 404(a)); *Lev v. South Nassau Communities Hosp.*, No. CV 10-5435, 2011 WL 3652282, at *2 (E.D.N.Y. Aug. 11, 2011) (Evidence of plaintiff's propensity to act in a certain manner is inadmissible under Fed. R. Evid. 404(a)).

Verizon also argues that it is entitled to plaintiff's current personnel records to assess whether plaintiff's employment at Allstate may be a contributing

cause of her complaints of emotional distress. Dkt. #176, pp.14-15. For example, Verizon argues that if plaintiff received poor performance evaluations or was subjected to disciplinary action, that would be relevant to plaintiff's claim for damages. Dkt. #176, p.15. Alternatively, Verizon argues that if plaintiff never misses work due to illness, her claims of alleged physical symptoms of distress are suspect. Dkt. #176, p.15. In response to Interrogatory No. 9, plaintiff stated that she "suffered emotional pain and suffering, distress, humiliation and embarrassment following each act of discrimination and retaliation by Defendant." Dkt. #173-2, p.16. In response to Interrogatory No. 10, plaintiff stated that she treated with certain health care providers for medical conditions caused by such emotional distress. Dkt. #173-2, p.17. The Court does not interpret these responses, which are framed in the past tense, as suggesting emotional distress damages continuing into her employment with Allstate. However, even if plaintiff is claiming ongoing emotional distress beyond a reasonable transition period from her termination by Verizon and commencement of employment with Allstate, it seems significantly more likely that evidence of alternative sources for such distress would be found in the medical records of plaintiff's health care providers rather than the personnel records of her current employer. The Court will not permit Verizon to engage in a fishing expedition of the personnel records of plaintiff's current employer based upon nothing more than pure speculation.

Finally, Verizon argues that plaintiff's training regarding investigation of insurance fraud "bears on her awareness and understanding of her own fraudulent conduct, how she previously attempted to explain it away when deposed, as well as

Verizon's position that it would have terminated her on this basis." Dkt. #176, p.16. Setting aside the likelihood that Verizon's subpoena of information relating to its employee training program seeks proprietary information, it is completely irrelevant to defendant's ability to prove its allegations of fraud committed by plaintiff prior to her termination by Verizon.

       Plaintiff's motion to quash the subpoena (Dkt. #169), is granted.

**SO ORDERED.**

DATED:    Buffalo, New York
             October  19, 2016

                                          **s/ H. Kenneth Schroeder, Jr.**
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**