**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

**CINDY L. MOLL,**

               **Plaintiff,**

      **v.**

**TELESECTOR RESOURCES GROUP,
INC., d/b/a VERIZON SERVICES GROUP,
a/k/a VERIZON NEW YORK INC.,**

             **Defendant.**

**Case No.  04-CV-0805**

**JUDGE SKRETNY**

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In August 2005, Plaintiff Cindy Moll ("Plaintiff" or "Moll") set about a scheme to dupe Defendant, Verizon Business (hereinafter "Defendant" or "Verizon") into paying her a full salary plus incentive compensation while she claimed to be disabled and unable to work, but was actually attending an accelerated college degree program, earning 21 college credits over seven months in three-credit courses (such as Financial Accounting and Financial Management) that were condensed into five-week sessions.  During these same seven months, Moll intentionally told mental health professionals that she was, among other things, unable to function, fatigued, had little motivation or energy, and had difficulty concentrating and with memory.  They, in turn (and in exclusive reliance upon what Moll told them) opined that Moll was totally disabled and unable to perform her job at Verizon.  This was a sham, as the story that Moll was telling her treating professionals was at odds with the pace she kept and academic demands she satisfied at Medaille College.  Now, Moll tries to foreclose Verizon's ability to recover the wages to which she was never entitled in the first place via her summary judgment motion (Dkt.  215), which this Court should deny for the following reasons:

- ***First***, Moll waived the defense of ERISA preemption by failing to raise it until the filing last month of her summary judgment motion, which was nine years and two months after Verizon first asserted its counterclaims.  Twice, in 2008 and again in 2015, Moll answered Verizon's counterclaims, but she never raised ERISA preemption.

- ***Second***, as noted above, record evidence demonstrates that Moll intentionally misrepresented her health condition in order to win approval of her short-term disability claim so that Verizon would pay her while she attended college.  She told one story (that she had no motivation and was—among other things—unable to function, focus, or concentrate) but lived another (completing, with high grades, 21 college credits).  Had Verizon's third-party claim administrator known the extent of Moll's academic pursuits, it would not have approved her short-term disability claim, and Verizon would not have paid Moll.

For these reasons, as explained in detail below, this Court should deny Moll's Motion for Summary Judgment.

## I.     FACTUAL BACKGROUND

### A.     Verizon's Short-Term Disability Plan

In 2005 and thereafter, Verizon provided short-term disability coverage to eligible employees, for which it paid the full cost (e.g., self-insured funding) in the form of continuation of pay for up to 52 weeks.  Eligible participants (in order to be entitled to benefits) were required to demonstrate to a claim administrator that they were unable to perform the essential functions of their own job or any other job Verizon offered and for which they were reasonably qualified.

*Total disability*
Under the terms of the STD plan, you are considered totally disabled if, as a result of illness or injury:

- You are unable to perform the essential functions of your own job or any other job[1] the company may offer you for which you are reasonably qualified because of training, education or experience, and

- You are not working at another job (including self-employment), earning income that is greater than 20% of your base pay at the time of disability.

2

*See* Defendant's Response to Plaintiff's "Uncontested" Material Facts ("RSMF"), at ¶¶2, 3

(citing Benefits Booklet, attached as Ex. B (ECF 215-3) to Plaintiff's Statement of Uncontested

Material Facts, at p. 8-5 (pertinent part pasted above)).

Eligible participants who demonstrated total disability received up to 100 percent of their

base pay. *Id.* Eligibility for these salary-continuation benefits was determined by a third-party

claim administrator, who in 2005-06 was Unum Provident ("Unum Provident"). *Id.* In making

benefit-eligibility determinations, Unum Provident relied on information provided by the

employee's doctor over the period during which salary-continuation benefits were sought.

> The outside administrative organization determines
> whether or not you meet the plan's definition of total
> disability based on objective medical evidence that
> you and/or your doctor provide in support of your
> claim for benefits. The information that you and/or
> your doctor provide is also used to determine the
> period of time that you will be approved to receive
> STD benefits.

*Id.*

Verizon engaged Unum Provident as a third-party claim administrator to ensure that

claim determinations were impartial and independent while also insulating Verizon from

exposure to employee medical information.  In fact, when making claims determinations, Unum

Provident does not typically share employee medical information with Verizon, and nothing in

the Unum Provident claim file regarding Moll indicates that it shared any of her medical

information with Verizon when administering her claim.  *See* RSMF at ¶¶17, 20.

### B.     Plaintiff Perpetrates Disability Fraud by Misrepresenting Her Condition

Moll was employed by Verizon, or its corporate predecessor from June 1990 until 2007.

In early 2005, Moll's reporting location, as well as the reporting location of three other

employees, was moved from Buffalo to Syracuse.  RSMF at ¶22.  However, as this Court already

3

determined, Moll never actually reported to the Verizon office in Syracuse; instead, she arranged business appointments in Buffalo to avoid traveling to Syracuse, and her supervisor (Chris Gaglione) never required her to report to Syracuse.  *See* Verizon's Statement of Material Facts in Support of its Motion for Summary Judgment (Dkt. 216-1) at ¶¶ 190, 193, 199-201; *see also* ECF-117 at p. 36 ("Because Plaintiff regularly worked from home during the first six months of her assignment in Syracuse and was on disability leave for another seven months and did not report to Syracuse during that time, she was not negatively impacted by the transfer.").

Moll commenced a disability leave on August 30, 2005 and remained off work through and including March 7, 2006.  RSMF at ¶¶25, 53.  During that period, Moll perpetrated disability fraud against Verizon by lying to her treating psychiatrist, Dr. Maria Nickolova, and a social worker, Mary Ellen Kranock, reciting nonexistent symptoms so that they would, in turn, opine to Unum Provident that Moll was totally disabled from her job.[1]  To her credit, Moll herself admits that Dr. Nickolova's opinions regarding Moll's mental health were at all times based not on any physical examination or tests, but rather on what symptoms Moll described to Dr. Nickolova during office visits.  RSMF at ¶24 ("Q: And would you agree with me that [Dr. Nickolova's] assessment of your condition was largely based on what you told her?  A: Yes.").  The foregoing was confirmed by Dr. Nickolova, who agreed that there is no way to confirm that Moll was experiencing the symptoms that she described during office visits.  *Id*.  Social Worker Krancok similarly relied on Moll's statements about her symptoms.  *Id*. at ¶11 ("*client states* that she is not sleeping well, is not productive. . . with poor motivation, energy. . .").  The psychiatrist and

---

[1] As the Court is aware, Moll is the same person who, in 2001, never spoke up as Verizon mistakenly paid her full-time pay for part-time work, overpaying $10,602.45 to Moll over an eight-month period.  Faced with the choice of disclosing these overpayments or waiting to determine if Verizon ever noticed, Moll said nothing, depositing each pay check and never disclosing that she was being paid more than to which she was entitled.  When confronted with the overpayment in April 2001, Moll had no choice but to disingenuously contend that she never noticed that her monthly pay during those months when she was working part time was, on average, $1,769.35 per month more than what it should have been.  *See* Dkt. No. 216-1 at ¶¶57-65.

social worker (in complete reliance on the information that Moll provided to them) in turn opined to Unum Provident that Moll was totally disabled from work, on which Unum Provident relied when approving Moll's disability claim. *Id.* at ¶¶9, 11-12, 46.

The scheme started in August 2005, when Moll sensed that she might actually soon be required to report to a Verizon office in Syracuse. On August 29, 2005, Moll visited Dr. Nickolova and reported that she had an "[i]nab[ility] to function, fatigue, difficulty in concentration, no motivation, decrease in ADL [activity of daily livings], constant worries, [and a] high level of anxiety." Dr. Nickolova testified that she recorded these "subjective factors" in her physician's report, and that these symptoms exclusively were based on what Moll told her during their appointment. *Id.* at ¶25. Dr. Nickolova did not undertake any steps (nor could she, frankly) to confirm that Moll was actually experiencing any of the symptoms that she reported during her August 2005 appointment. *Id.* at ¶26. As Dr. Nickolova testified, there is generally no way to confirm the subjective information of this type that is relayed by mental health patients. *Id.* Dr. Nickolova is the one who first opined that Moll was totally disabled from her job. *Id.* at ¶23.

On September 14, 2005, Dr. Nickolova completed Unum Provident's Attending Physician Statement form related to Moll's disability claim. On this form, Dr. Nickolova indicated that Moll could not work, and listed Moll's "limitations" as "difficulties with concentration, attention, unable to focus, fatigue, insomnia, no motivation." Dr. Nickolova testified that the symptoms that she described on this form were substantively identical to what Moll described to her, which her records confirm. *Id.* at ¶¶7, 27.

Eleven days later, on September 25, 2005 a nurse employed by Dr. Nickolova completed another Attending Physician Statement form related to Moll, indicating that Moll was suffering from depression and was having symptoms of fatigue, increased anxiety, poor concentration,

constant worries, and poor sleep.  Additionally, the completed form stated that Moll should perform "no work at all."  This form was reviewed and signed by Dr. Nickolova before it was submitted to Unum Provident.  *Id*. at ¶28.

However, during August and September 2005, and during this period when Moll represented herself as being unable to function, having difficulty concentrating, and no motivation, Moll took a three-credit course entitled Financial Accounting at Medaille College.  For this course, like all courses that Moll took while she was on disability leave, the curriculum was condensed from a full semester into five weeks.  For this course, Moll attended a four-hour class and a four-hour study group every week, and studied at least an additional eight hours per week on her own.  She received a grade of B+ in this course.  *Id*. at ¶29.

The scheme continued in October 2004, when Moll told Dr. Nickolova during an appointment that she was anxious and depressed, had little motivation, was unable to concentrate, and had difficulty with memory.  Dr. Nickolova recorded the symptoms that Moll described in her notes and, based on that information from Moll, determined that Moll was unable to return to work until further notice.  *Id*. at ¶30. ("Q: And what you recorded under the subjective category, was that based on information that Moll provided to you? A:Yes Q: Anything else? A: No.").  Yet, in October, while representing herself as being anxious and depressed, having little motivation and being unable to concentrate and remember things, Moll took a three-credit course entitled Ethics in the Workplace.  For this course, Moll attended a four-hour class and a four-hour study group every week, and studied at least an additional eight hours per week on her own.  Despite purportedly having "low motivation, unable to concentrate, difficulty with memory" she received a grade of A in this course.  With respect to how she earned her grade, she said "I'm sure there were tests" as well as case studies.  *Id*. at ¶31.

NAI-1503035684v4

Moll continued with the lies when she returned to Dr. Nickolova on November 2, 2005, when she told the psychiatrist that she was very anxious, was unable to relax, had constant worries and trouble sleeping. *Id*. at ¶32. That same month, despite her purported condition, Moll took a three-credit course entitled Financial Management, again attending a four-hour class and a four-hour study group every week, and studied at least an additional eight hours per week on her own. She received a grade of A in this course. Her grade was based on "a couple of tests … [and] my homework as well." *Id*. at ¶33.

Moll returned to see Dr. Nickolova on December 2, 2005, stating that day that she was more depressed, was anxious, slept during the day, and was experiencing hypersomnia and fatigue. *Id*. at ¶34. Ten days later, on December 12, 2005, Dr. Nickolova submitted a Unum Provident Psychiatric Assessment Form. That form stated that Moll was suffering from anxiety, depression, very low energy, and constant worries. *Id*. at ¶35. Notably, in that same form, Nickalova indicated that she was not aware that Moll was engaged in any school, training, or volunteer activities:



*Id*. at ¶¶16, 35. Also in December 2005, Moll told Social Worker Kranock, that she was unable to keep up with everyday responsibilities, like meal preparation, and housework, that she had poor concentration and focus, and that, due to a lack of energy and motivation, she was only able "to push through when pressed for short periods." *Id*. at ¶36. However, in that same month, Moll kept up with the academic demands of her accelerated degree program, achieving the grade of A in a three-credit course entitled Legal Environment of Business. For this course, Moll again

attended a four-hour class and a four-hour study group every week, and studied at least an additional eight hours per week on her own. *Id*. at ¶37.

During a January 5, 2006 appointment, Moll told Dr. Nickolova she was even more tired, more depressed and had *no* motivation. *Id*. at ¶38. Yet, in January 2006, Moll achieved a grade of A-minus in the three-credit course entitled Applied Managerial Accounting. For this course, Moll attended a four-hour class and a four-hour study group every week, and studied at least an additional eight hours per week on her own. *Id*. at ¶39.

In January 2006, Moll specifically reported to Social Worker Kranock that "she still feels [sic] tired much of the day." *Id*. at ¶40. Then, "[i]n the beginning part of February" 2006, Moll talked over the telephone to her then-supervisor, Chris Gaglione, who informed her that as part of a restructuring related to Verizon's merger with MCI, her work location would be moving from Syracuse to a location in Amherst, New York, in suburban Buffalo. *Id*. at ¶41. That same month, Moll visited Dr. Nickolova and stated "I'm better" and reported less symptoms of depression to her doctor. *Id*. at ¶42. She remained out, however.

During February, Moll took a three-credit course entitled Negotiation and Dispute Resolution. For this course, Moll attended a four-hour class and a four-hour study group every week, and studied at least an additional eight hours per week on her own. She received a grade of A-minus in this course. *Id*. at ¶43.

Then, in March, and now sure that she would report to work in Buffalo and not have to report to the Verizon office in Syracuse, Moll's symptoms that she consistently had described since August, miraculously subsided; she told Dr. Nickolova that "I am a lot better. I would like to return to work." *Id*. at ¶44. Dr. Nickolova testified that as of March 2006 she believed that Moll was ready to return to work, based on the statements that Moll made to her. *Id*. at ¶45. ("Q. Okay. And was it based on information that she related to you? . . . A. Yes. Q. Such as her

saying I'm a lot better and I'd like to return to work? . . . A. Yes."). Moll returned to work on March 7, 2006. *Id*. at ¶43.

Throughout Moll's disability leave, Unum Provident periodically requested from Moll's psychiatrist and social worker copies of medical records in their possession related to Moll, including office notes, treatment reports, and treatment plans. Unum Provident relies on the information contained in the treating physician's notes when making determinations regarding benefits eligibility. Here, Unum Provident reviewed the information in the medical records provided by Dr. Nickolova and Social Worker Kranock, which reflected what Moll told each of them, when it approved and periodically reapproved her claim for disability benefits. *Id*. at ¶46. Although Unum Provident makes claim determinations, Verizon pays the wages in accordance with regular paydays, substantively identical to the manner in which an employee receives wages when they are working. *Id*. at ¶52. Here, over the period of her disability leave, Verizon paid Moll her full salary, plus incentive pay based on the assumption that she would have achieved 100 percent attainment of her team sales goal had she been working. *Id*. at ¶53.

All told, while out on disability leave from August 2005 through March 2006 and representing that she was incapacitated, Moll completed all or part of 21 college credits in her accelerated degree program, including the three she received for passing a DANTES test that allowed her to gain credit in Management Information Systems. Moll earned the following grades in her courses:

| Course | Grade | Credits |
|---|---|---|
| Financial Accounting | B + | 3 |
| Ethics in the Workplace | A | 3 |
| Financial Management | A | 3 |
| Legal Environment of Business | A | 3 |
| Applied Managerial Accounting | A- | 3 |
| Negotiation and Dispute Resolution | A- | 3 |
| DANTES: Management Information System | Pass | 3 |

NAI-1503035684v4

*Id*. at ¶42.  To the extent that Ms. Moll sought and received tuition assistance from Verizon to pay the costs associated with these courses, she did so by submitting requests directly to an external vendor, CAEL, which in 2005 and 2006 administered Verizon employee requests for tuition reimbursement.  *Id*. at ¶15.  Notably, she misrepresented to this vendor that she was working, describing herself as a full-time management employee listing as her daytime phone number in January 2006 (the midpoint of her seven-month disability leave) the then-phone number for the Verizon office in Syracuse (to which she had never even reported):



*Id*. at ¶21.  Moll also engaged in other activities while out on disability leave, including volunteering at her daughter's kindergarten class, helping out in the lunch room at her daughter's school either "once a week or once every other week," and volunteering at Harris Hill Nursing Home each week.  *Id*. at ¶49.

### C.   Relevant Procedural Background

Moll filed her original Complaint in this case on October 5, 2004, alleging violations of Title VII of the Civil Rights Act, the New York Human Rights Act, and Equal Pay Act and asserting that this Court had original jurisdiction pursuant to 28 U.S.C. § 1331.  *See* Dkt. No. 1. On April 17, 2008, Moll filed an Amended Complaint against Defendant, again asserting federal claims and original jurisdiction.  Dkt. No. 57.  On May 6, 2008, Verizon answered the Amended Complaint and asserted counterclaims against Moll for unjust enrichment and fraudulent misrepresentation, seeking to recover benefits that Verizon paid to Moll when she falsely

10

represented that she was disabled from August 2005 to March 2006.  *See* Dkt. No. 58.  Verizon made clear that it was asserting its counterclaims under state-law theories, including by stating that the Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  *Id*.  Moll responded to the counterclaim on May 27, 2008, but did not raise the defense of preemption under the Employee Retirement Income Security Act ("ERISA"), nor did she mention ERISA at all.  *See* Dkt. No. 59.

Following remand from the Second Circuit Court of Appeals, Moll had another chance to answer Verizon's counterclaims in 2015 and, again, failed to raise the defense of ERISA preemption.  Moll filed a post-remand Second Amended Complaint (the operative Complaint in this case) on April 2, 2015.  *See* Dkt. 148.  In response, Verizon answered and re-filed its counterclaims for unjust enrichment and fraudulent misrepresentation against Moll.  *See* Dkt. No. 149.  Moll answered Verizon's counterclaims on May 5, 2015, in which she raised six defenses, none of which was ERISA-preemption.  In fact, again, "ERISA" does not even appear in her Answer.  *See* Dkt. No. 150.

## II.     ARGUMENT

Plaintiff's motion for summary judgment should be denied for several reasons.  *First*, Plaintiff has waived the defense of ERISA preemption and should be barred from raising it, for the first time, at this late stage of litigation.  *Second*, record evidence establishes that Plaintiff intentionally misrepresented her health condition in order to be able to collect her full salary and incentive compensation while earning 21 college credits.  Had Plaintiff accurately represented her medical condition or circumstances, Unum Provident would not have approved her claim, and Verizon would not have continued to pay her salary.

### A.      Summary Judgment Standard

Summary judgment is appropriate where the movant has established that there are no genuine issues of material fact in dispute and she is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Id*. at 248.  In deciding a motion for summary judgment, a court cannot properly make credibility determinations or weigh the evidence, as these are jury functions.  *Id*. at 255.

### B.      Moll Waived Her ERISA Preemption Defense

In her Memorandum of Law in support of her motion for summary judgment, Moll claims—for the first time in this case—that Verizon's counterclaims are preempted by ERISA. Dkt. No. 215-7, at pp. 6-8.  However, Moll has waived this defense by failing to ever raise ERISA preemption (except in her August 2017 summary judgment motion) during the nine years-plus since Verizon's counterclaims were first filed.

### 1.      ERISA Preemption Can Be Waived if Not Timely Asserted

In this case, there is no dispute that Verizon paid Moll her salary during the period from August 2005 through March 2006.  RSMF, ¶52.  During that period, it is Verizon's position that Moll misrepresented her symptoms so she could collect her full salary and incentive compensation while earning 21 college credits by taking classes condensed from a full-term curriculum into five week sessions as part of an accelerated undergraduate degree program. Moll, on the other hand, contends that ERISA controls and pre-empts Verizon's counterclaims. Further, she contends that even if Verizon were permitted at this point to assert an ERISA claim against Moll, the claim would fail because Verizon cannot state an equitable claim under ERISA Section 502(a)(3) and also because Moll has since spent all the money that she received from

12

Verizon.  *See* Dkt. 217-7, pp. 6-8.

If Moll wanted to argue ERISA pre-emption, she should have raised it when first served

with Verizon's counterclaims on May 6, 2008.  *See* Dkt No. 58.  Because Moll allowed over nine

years to pass before first asserting ERISA preemption last month, she waived that defense.  The

Second Circuit has held that where ERISA "preemption affects only the choice of law, the

defense may be waived if not timely raised."  *Saks v. Franklin Covey Co*., 316 F.3d 337, 349 (2d

Cir. 2003).  In *Saks*, the plaintiff brought, among other claims, a breach of contract action under

New York law against her employer for not paying the costs of fertility treatments under the

employer's health plan.  *Id*. at 341.  Although the health plan was an ERISA-covered health plan,

the employer waited until it moved for summary judgment to first argue that ERISA preemption

foreclosed the plaintiff's state law breach of contract claim.  After the federal district court

entered summary judgment for the employer, the Second Circuit was charged with determining

whether the employer waived the defense of ERISA preemption by not raising the issue for the

first time until its summary judgment motion.

As background, in *International Longshoremen's Association, AFL-CIO v. Davis*, 476

U.S. 380 (1986), "the Supreme Court made clear that preemption issues that dictate the choice of

forum are jurisdictional and therefore may not be waived, but expressly stated that this rule does

not extend to preemption issues that affect the parties' choice of law."  *Saks*, 316 F.3d at 349.  In

interpreting *Davis* when ruling in *Saks*, the Second Circuit explained that "the converse of the

*Davis* rule also holds: Where federal preemption affects only the choice of law, the defense may

be waived if not timely raised."  *Id*.  Ultimately, the Second Circuit held that, because ERISA[2]

---

[2] While the Court in *Saks* analyzed so-called "benefits-due" claims brought by plan participants under ERISA Section 502(a)(1)(B), *see Saks*, 316 F.3d. at 349, Moll appears to assert that Verizon's claim would be preempted by ERISA Section 502(a)(3).  29 U.S.C. § 1132(a)(3).  Dkt. No. 215-7 at p.6.  Nonetheless, like the ERISA defense in *Saks*, Moll's preemption defense here affects only the choice of law, and her defense is waived because it was not timely raised.

NAI-1503035684v4

preemption could not affect the choice of forum in that case, ERISA preemption would only affect choice of law and, thus, could be waived if not timely pled as an affirmative defense. *Id*.

Applying this same rule, the Ninth Circuit found that ERISA preemption is not jurisdictional in federal district court because reclassifying a state law claim as an ERISA claim would mean that the claim would nonetheless "clearly fall within the district court's jurisdiction." *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488 (9th Cir. 1986). Thus, ERISA preemption raised in federal district court could only effect a question of choice of law and could be waived if raised untimely. *Id*. Additionally, preemption is not jurisdictional where a federal district court has proper supplemental jurisdiction over the state law claims that would have been preempted. *Id*. Indeed, "where a state claim is properly within federal court based either on pendant or diversity jurisdiction, then federal preemption will not affect the forum." *Penn Cent. Nat. Bank v. Connecticut Gen. Life Ins. Co.*, No. CIV. A. 86-2694, 1990 WL 83326, at *2 (W.D. Pa. Jan. 10, 1990), *see also McCarthy v. Am. Int'l Grp., Inc.*, No. CIV.A. 99-1645, 2006 WL 1154960, at *2 (E.D.N.Y. May 1, 2006).

Applying the Second Circuit's reasoning in *Saks* here, if Moll's claim of ERISA preemption would effect a change of forum in this case, then it is jurisdictional and cannot be waived. However, if ERISA preemption would only effect the law applied, then ERISA preemption is waived if not timely pleaded as an affirmative defense. *Saks*, 316 F.3d at 349. Moll's preemption argument falls into the latter category because it could not affect jurisdiction and could only effect the choice of law in this case. First, *Moll* filed this case in this U.S. District Court in the first instance, alleging federal question jurisdiction given her Title VII and EPA claims. *See* Dkt. No. 1 at ¶1 (invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331). Second, Verizon's counterclaims are properly before this Court, having been asserted

pursuant to 28 U.S.C. § 1367(a).  *See* Dkt. 149 at Counterclaim ¶2 ("Jurisdiction of this Court is

invoked pursuant to 28 U.S.C. § 1367(a)").  In fact, in making her preemption argument, Moll

does not claim that this Court lacks supplemental jurisdiction over Defendant's counterclaims.

*See* Dkt. No. 215-7, at pp. 6-8.  Because claims under ERISA Section 502(a)(3), which Plaintiff

contends should preempt Verizon's counterclaims here, may only be heard by federal courts, *see*

29 U.S.C. § 1132(e)(1), there is no way that Plaintiff's preemption defense could affect this

Court's jurisdiction.  At end, Moll's argument is clearly an attempt to influence the choice of

applicable law, which clearly prejudices Verizon because Verizon never had reason or

opportunity to discover what Moll did with the money that she received and also because (as

Moll herself argues) ERISA preemption would leave Verizon at this late stage, nine years after it

filed the counterclaims, without any remedy to recover the money to which Moll was not entitled

in the first place.  *See* Dkt. No. 215-7, at p. 8 (Moll arguing that "ERISA … precludes a fiduciary

from seeking money damages from a beneficiary" and also that "her expenditure of the

identifiable fund destroys any equitable lien").  In light of the foregoing, Moll's defense of

ERISA preemption can indeed be waived if not timely asserted, which is the case here (as

discussed further below).  *See Saks*, 316 F.3d at 349, *Gilchrist*, 803 F.2d at 1488, *McCarthy*,

2006 WL 1154960, at *2, *Penn Cent. Nat. Bank*, 1990 WL 83326, at *2.

### 2.     Moll Waived ERISA Preemption by Raising it for the First Time in Her Motion for Summary Judgment

Here, as discussed, Moll clearly waived ERISA preemption by failing to raise it for nine

years and two months after Verizon first asserted fraud and unjust enrichment claims on May 6,

2008 as alternative basis to recover the salary continuation payments to which Moll was not

entitled in the first place.  Rule 8(c) of the Federal Rules of Civil Procedure requires that a

responsive pleading must set forth "any avoidance or affirmative defense," including certain

15

enumerated affirmative defenses.  "Failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case."  *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984); *see also Saks*, 316 F.3d at 350 (defendant failed to timely pled ERISA preemption defense when it raised the defense for the first time in a motion for summary judgment), *Old Line Life Ins. Co. of Am. v. Garcia,* No. CIV. 02-40239, 2007 WL 4126516, at *3 (E.D. Mich. Nov. 19, 2007)(plaintiff/counterclaim-defendant waived ERISA preemption defense by raising it for the first time in a motion for summary judgment).

Here, despite having two opportunities to answer Verizon's counterclaims—when she originally answered the counterclaims on May 27, 2008 and again on May 5, 2015 (*see* Dkt. Nos. 59, 150)—Moll raised her ERISA preemption defense *for the first time* in her August 24, 2017 summary judgment motion.  Moll offered no explanation, nor did she seek leave to amend any of her pleadings in an attempt to properly assert the defense before raising it in her motion. Given this record (or, in this case, lack of any record of Moll raising the defense), Moll has waived it.

In response, Moll may argue that her reference to "subject matter jurisdiction" as the third affirmative defense in her May 5, 2015 Answer (*see* Dkt. No. 150) preserved the defense. If she does, she is wrong as a matter of law.  "Subject-matter jurisdiction. . . refers to a tribunal's power to hear a case."  *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 254 (2010)(internal quotation marks omitted).  As explained above, Moll's ERISA preemption defense does not relate to or effect this Court's power to hear Verizon's counterclaims.  *See Saks*, 316 F.3d at 349; *Gilchrist*, 803 F.2d at 1488.  (ERISA preemption was not a matter of subject matter jurisdiction because "[e]ven if the state-law claim in this case could be recharacterized as a federal ERISA claim, such recharacterization would clearly fall within the district court's jurisdiction.").

Moll also may argue that, under *Saks*, this Court may still entertain the ERISA

preemption defense first raised at the summary judgment stage in the absence of undue prejudice to Verizon.  That argument fails, too, because, as already noted above, Verizon is prejudiced. Among other things, Moll's own arguments suggest that allowing Moll to avail herself of ERISA preemption at this late stage of the case would leave Verizon without a remedy to recover salary-continuation benefits paid to Moll by Verizon and to which she was not entitled.  Specifically, as Moll argues in her summary judgment brief, if "ERISA preempts any state-law cause of action that would otherwise duplicate or replace a cause of action under ERISA, [Verizon] has no legal claim against Ms. Moll."  Dkt No. 215-7 at p. 8.  Even if Moll is wrong, and Verizon could assert an ERISA claim that is viable on the merits, it likely would be time-barred (which would not have been the case had Moll asserted ERISA preemption at the outset).  Accordingly, and because "[o]ne of the core purposes of Rule 8(c) is to place the opposing parties on notice that a particular defense will be pursued so as to prevent surprise or unfair prejudice," *Saks*, 316 F.3d at 337, the Court should deem Plaintiff's ERISA preemption defense to have been waived.  *See Delville v. Firmenich* Inc., 920 F. Supp. 2d 446, 467 (S.D.N.Y. 2013)("Nor would it be appropriate, given that Defendant's Answer was filed nearly three years before it first raised its [ERISA] preemption defense, for this Court to entertain [previously unpled] affirmative defenses at the summary judgment stage.")(internal quotation marks omitted), *Old Line Life Ins. Co. of Am. v. Garcia*, No. CIV. 02-40239, 2007 WL 4126516, at *3 (E.D. Mich. Nov. 19, 2007)(ERISA preemption waived when plaintiff "waited nearly a year to raise its ERISA preemption defense, resulting in a significant delay and surprise").

17

**C.     With ERISA Preemption Waived, Summary Judgment Should Be Denied Because Plaintiff Misrepresented Her Condition in Order to Collect Disability Benefits While Attending College Full-Time**

With ERISA preemption waived, the Court also must deny Plaintiff's summary judgment motion as it relates to Verizon's fraudulent misrepresentation and unjust enrichment claims as originally pleaded because a reasonable jury could find, based on record evidence, that Moll lied to her treating professionals about her medical condition as part of her scheme to dupe Verizon into paying her full salary plus incentive compensation while she attended college in an accelerated degree program.

To make its claim for unjust enrichment, Verizon must show "(1) that [Moll] was enriched; (2) that the enrichment was at [Verizon]'s expense; and (3) that the circumstances are such that in equity and good conscience [Moll] should return the money or property to [Verizon]." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001).  Meanwhile, Verizon can sustain its claim for fraudulent misrepresentation by showing that "(1) [Moll] made a material false representation, (2) [Moll] intended to defraud [Verizon] thereby, (3) [Verizon] reasonably relied upon the representation, and (4) [Verizon] suffered damage as a result of such reliance." *Keywell Corp. v. Weinstein*, 33 F.3d 159, 163 (2d Cir. 1994).  Courts are hesitant to grant summary judgment in cases alleging fraud because it involves a determination of the defendant's intent, which "is a purely a question of fact. . .inappropriate for summary judgment." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 712 (2d Cir. 1991)(internal citations omitted), *see also Carlone v. Lion & the Bull Films, Inc.*, 861 F. Supp. 2d 312, 325–26 (S.D.N.Y. 2012)("Deciding the issue of intent would likely require credibility determinations that are not appropriately resolved on summary judgment.").

Here, "solid circumstantial evidence" demonstrates that Moll lied to her treating

professionals about her medical condition as part of her scheme to dupe Verizon into paying her full salary plus incentive compensation while she attended college in an accelerated degree program. *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991). Throughout the period commencing on August 30, 2005 through and including March 7, 2006, Moll told her treating physician and counselor that, among other symptoms, she was unable to function, concentrate, focus, remember things, motivate, sleep, or complete simple household chores. RSMF at ¶¶25, 27, 30, 32, 34, 36, 38. However, at the same time she was telling that story, Moll was living a completely different reality, attending an accelerated college degree program that required her to attend, each week, four hours of class, four hours of study group, and to study— at least—an additional eight hours on her own. RSMF at ¶¶29,31, 33, 37, 43, 47, 48. Not only was Moll meeting the demands of her classes, but she did so while achieving high marks, securing three As, two A-minuses, and a B-plus. *Id*. at ¶48. Moll's statements regarding her alleged symptoms and the reality of her capabilities during this period do not align; any reasonable fact finder could conclude that she was misrepresenting her symptoms to her doctor and social worker.

Moll had the opportunity to perpetuate this fraud because, as Moll and her psychiatrist testified, the doctor's assessment was based on what Moll said about her condition, and what Moll said could not be independently verified. *Id*. at ¶¶24-26. Moll's false statements regarding her condition were memorialized in her doctor's notes. *See e.g., Id*. at ¶¶25-28. Not only did these notes contain a "subjective" section in which Moll could list her complaints about her condition, but Moll's physician relied exclusively on what Moll reported about her condition when assessing and diagnosing her. *Id*. at ¶¶24-27, 45. Unum Provident, as the third-party administrator of the STD benefits, then reasonably relied on these notes in determining that Moll

NAI-1503035684v4

was disabled from her job.  *Id*. at ¶46.  In essence, Moll used her doctor to create a false record of her condition.  However, if the third-party claim administrator had known the truth regarding Moll's condition, including her ability to devote at 16 hours a week to schooling in an accelerated college degree program in which full-term curriculum was condensed into five-week sessions, it would not have approved her claim for benefits, as it would not have deemed her "totally disabled" under the STD—a status reserved for employees who are not able to complete the essential functions of her job due to disability.  *Id*. at ¶¶2, 54.

While Unum Provident made the eligibility determinations, Verizon paid Moll's disability benefits.  *Id*. at ¶52.  Moll admits that from August 30, 2005 through March 7, 2006— during which time she dedicated at least 16 hours per week to her schooling, earned 21 college credits, and volunteered at her daughter's school and at a nursing home—Verizon paid Moll 100 percent of her salary, plus incentive pay based on the assumption that she would have achieved 100 percent attainment of her team sales goal had she been working.  *Id*. at ¶53.  For a period of seven months, Verizon paid  Moll this full salary in a similar form to her regular paycheck, even though she was not working and had secured a benefits eligibility determination under false pretenses.  *Id*.

Moll claims that summary judgment must be granted in her favor because, "[t]o the extent that Defendant claims that Moll was never disabled, it has no medical evidence to support such a claim."  Dkt. 215-7 at p. 10.  Moll's argument, however, ignores the wealth of evidence indicating that Moll's medical records were inaccurate because assessments set forth therein, deeming her to be unable to work, were based on what Moll told her treating professionals, which was lies, as is demonstrated by the record evidence. Take, for instance December 2005, when Moll told Dr. Nickolova that she was more depressed, anxious, fatigued, and had low

20

energy, and told Social Worker Kranock that she could not keep up with everyday responsibilities like meal preparation and housework, had poor concentration and focus, and due to lack of energy she could only "push through when pressed for short periods."  During that same month, Moll completed and earned an A in the course titled Legal Environment of Business, which required her to devote at least 16 hours a week to class time, studying, and completing case studies.  RSMF at ¶¶34-37.  Meanwhile, Nickalova did not believe Moll was even in school.  *Id*. at ¶16 (writing, with respect to school, "none.").

Further, Moll claims that she did not commit disability fraud because she "fully and completely provided material facts to Defendant"  *See* Dkt. 215-7 at 8-9.  This is false for several reasons.  The medical records that were submitted to Unum Provident indicate that Moll only made a few passing references to the fact that she was in school.  RSMF at ¶17.  In addition, Physiatrist Assessment Form, signed by Ms. Moll's treating physician, indicates that the physician believed that Ms. Moll was not involved in any school or training at the time.  *Id*. at ¶¶16, 35 ("consider the following categories of functioning. . .Volunteer work, Schooling or training. Helping at work sites: 'None.'").  The records received by Unum did not indicate that Moll was in an accelerated undergraduate degree program, spending a minimum of 16 hours a week engaged in either class time or studying (either with a group or independently), that she was excelling in these classes, or that she earned high marks and a total of 21 credits toward her college degree while claiming to have no motivation and limited ability to concentrate.  *Id*. ¶¶16-17.  It simply doesn't add up.  To the extent that Moll asserts that Unum Provident was aware of the extent of her enrollment in an accelerated degree program because Verizon paid her tuition, this also is false.  Verizon's tuition assistance program was, in 2005 and 2006, administered by outside vendor CAEL.  In order to receive tuition assistance, Moll submitted her requests directly

to CAEL.  There is nothing in the record to indicate that Unum Provident or CAEL shared any information regarding Ms. Moll, let alone details regarding the extent of her schooling.  Lastly, Moll made it appear to CAEL like she was actually working during the day at the Verizon office in Syracuse, which was never the case  *Id*. at ¶¶15, 21.  As for what Moll told her treating professionals, it consistently was that she was "unable to function," "had difficulty concentrating" and "no motivation."  *Id*. at ¶25.  Again, these claims are contradicted by the fact that Moll was excelling in her college degree program at the same time.

Finally, Moll seems to assert that counterclaims were brought in retaliation for her underlying discrimination, harassment, and retaliation claims against Defendant.  In support of this, Moll merely notes that counterclaims were brought "not until after Moll brought the instant lawsuit."  *See* Dkt. No. 215-7, at p. 10.  However, Moll fails to realize that the facts surrounding Plaintiff's fraud only came to light during discovery in this case.  Thus, when Verizon learned of Moll's fraud and unjust enrichment through the STD plan, particularly that Moll had lied to dupe Verizon into paying her seven months of salary and incentive compensation to which she was not entitled, it brought the counterclaims.  As for Moll, this is an individual who accused Verizon of disparate treatment simply because co-workers who jointly purchased Sabres hockey tickets with their own money did not share them with her.  *See* Dkt. No. 216-1 at ¶¶156-160.  If Moll thought she was facing retaliation when Verizon filed counterclaims, she surely knew how to pursue such a claim within 300 days at the Equal Employment Opportunity Commission.  She did not.

At end, a reasonable fact finder could determine, based upon the record, that Moll made numerous material false representations with the intent of having her disability claim approved, and Verizon (through its claim administrator) reasonably relied upon those representations,

NAI-1503035684v4

which ultimately caused Verizon to pay Moll full salary and incentive compensation to which she was not entitled. *Keywell Corp. v. Weinstein*, 33 F.3d at 163. Further, a reasonable fact finder could find that Moll's lies regarding her condition caused her to be enriched at Verizon's expense, and that equity and good conscious should not permit Moll to retain a salary to which she was not entitled and secured under false pretenses. *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d at 519. Thus, summary judgment must be denied.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Verizon respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims.


Dated: September 22, 2017
      Pittsburgh, Pennsylvania

                       By:  <u>s/ James S. Urban</u>
                             James S. Urban, Esq.
                             JONES DAY
                             500 Grant Street, Suite 4500
                             Pittsburgh, PA 15219
                             (412) 391-3939
                             jsurban@jonesday.com
                             *Admitted Pro Hac Vice*


                             Attorney for Defendant

NAI-1503035684v4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of September, 2017, a copy of the foregoing

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment

was served via the Court's Case Management/Electronic Case Files (CM/ECF) System on the

following:

> jgreco@grecolawyers.com
> Josephine A. Greco, Esq.
> Greco Trapp, PLLC
> 1700 Rand Building
> 14 Lafayette Square
> Buffalo, New York 14203

_____

James S. Urban