UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CINDY L. MOLL,

                    Plaintiff,

        v.                                                **DECISION AND ORDER**

                                                          04-CV-805S

TELESECTOR RESOURCES GROUP, INC.,
d/b/a VERIZON SERVICES GROUP, a/k/a
VERIZON NEW YORK INC.,

                    Defendant.

## Table of Contents

I.   INTRODUCTION ................................................................................ 2
II.  BACKGROUND ................................................................................ 4
     A.  Proceedings Up to Second Circuit Remand ...................................... 4
     B.  On Remand:  Second Amended Complaint (Docket No. 148) and Proceedings to
         Motions for Summary Judgment .................................................... 7
     C.  Defendant's Motion (Docket No. 216) ............................................ 9
         1.  Defendant's Arguments ........................................................ 9

         2.  Response and Reply ............................................................ 9

     D.  Plaintiff's Motion Dismissing the Counterclaims (Docket No. 215) ............ 9
         1.  Plaintiff's Arguments ......................................................... 9

         2.  Response and Reply ........................................................... 13

III. DISCUSSION ................................................................................ 14
     A.  Applicable Standards ............................................................ 14
         1.  Summary Judgment ............................................................. 14

         2.  Title VII .................................................................... 16

         3.  New York State Human Rights Law ............................................. 19

         4.  Equal Pay Act ............................................................... 20

     5.      Supplemental Jurisdiction ............................................................. 20

     6.      Unjust Enrichment and Common Law Fraud ................................. 21

  B.  Dismissal of Counterclaims (Docket No. 215) ........................................ 22
  C.  Dismissal of Complaint (Docket No. 216) .............................................. 26
    1.     First Motion for Summary Judgment (Docket No. 101) ................. 27

    2.     Present Motion for Summary Judgment (Docket No. 216)............ 28

       a.     Byrne ............................................................................... 28

       b.     Hostile Work Environment ................................................ 30

       c.     Disparate Treatment and Retaliation ....................................... 38

         (1)    Transfer to Syracuse ................................................. 38

         (2)    Hockey Tickets ......................................................... 45

         (3)    Sales ....................................................................... 47

         (4)    Rankings ................................................................. 49

         (5)    Professional Networking............................................. 51

         (6)    Alternative Worksite ................................................. 53

         (7)    Layoff ..................................................................... 54

       d.     Pay Equity Claim .......................................................... 58

       e.     Supplemental Jurisdiction.............................................. 60

IV.  CONCLUSION ................................................................................. 60
V.   ORDERS.......................................................................................... 60

## I.    INTRODUCTION

Before this Court are Plaintiff's (Docket No. 215) and Defendant's (Docket No. 216)

Motions for Summary Judgment.   Plaintiff moves for summary judgment to dismiss

Defendant's counterclaims against her (Docket No. 215).   Defendant Telesector

Resources Group, Inc., d/b/a Verizon Services Group, a/k/a Verizon New York Inc. (hereinafter "Verizon Business," <u>see</u> Docket No. 217, Def. Memo. at 1 & n.1, or "Defendant") renews its motions (<u>cf.</u> Docket No. 101) for summary judgment dismissing the Complaint (Docket No. 216).

In support of her motion for dismissal of the counterclaims, Plaintiff submitted her Statement of Undisputed Facts ("Pl. Statement"), appendix of exhibits, and Memorandum of Law (Docket No. 215). Defendant submitted its Statement of Undisputed Facts ("Def. Statement"), appendix of exhibits (Docket No. 216), and Defense Memorandum of Law (Docket No. 217).

Responses to both motions were due by September 22, 2017, replies by October 6, 2017 (Docket No. 218). Defendant (Docket Nos. 219 (opposing memorandum), 220 (Defendant's Counterstatement of Facts, "Def. Response Statement," exhibits)) and Plaintiff (Docket Nos. 221 (Plaintiff's Counterstatement of Facts, "Pl. Counterstatement," exhibits), 222 (appendix of exhibits), 223 (Plaintiff's counsel's Declaration and opposing memorandum), 226 (letter correcting errors in Plaintiff's Counterstatement) filed their respective timely responses and then filed their timely replies (Docket Nos. 228 (Plaintiff), 227 (Defendant)) and the matter was deemed submitted, without oral argument.

This case is on remand from the United States Court of Appeals for the Second Circuit (Docket No. 134, Aug. 15, 2014, <u>see</u> <u>Moll v. Telesector Resources Group, Inc.</u>, 760 F.3d 198 (2d Cir. 2014)) after that court vacated the judgment granting partial summary judgment to Verizon Business (<u>see</u> Docket No. 117, Amended Decision and Order, May 30, 2012, 2012 U.S. Dist. LEXIS 74949) and granting Defendant's earlier

motion to dismiss (see Docket No. 13, Order of Sept. 29, 2005, 2005 U.S. Dist. LEXIS 43605). The court also addressed certain discovery orders, Moll, supra, 760 F.3d at 202-03. The Second Circuit held that this Court should have considered Plaintiff's allegations in their totality, that sex-based hostile work environment claims "may be supported by facially sex-neutral incidents and 'sexually offensive' acts may be facially sex-neutral," id. at 200 (citing Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002)), vacating dismissal of Plaintiff's Title VII and New York State Human Rights Law hostile work environment claims, id. at 204. The Second Circuit also vacated because this Court refused to consider a witness's affidavit when it contradicted earlier deposition testimony, denying that a witness (as opposed to a party) could create a "sham issue of fact," id. at 201, 204-06. Familiarity with the Second Circuit's decision (and the extensive procedural history of this case) is presumed.

On remand, this Court has considered not only the pending moving papers but also Verizon Business's initial motion for summary judgment (Docket Nos. 101-03, 112-14) and Plaintiff's opposition papers (Docket Nos. 107-08, 110).

For the reasons stated herein, Defendant Verizon Business's motion for summary judgment (Docket No. 216) is **granted**; Plaintiff's motion for summary judgment (Docket No. 215) to dismiss the counterclaims also is **granted**.

## II.    BACKGROUND

A. Proceedings Up to Second Circuit Remand

Plaintiff commenced this Title VII, 42 U.S.C. §§ 2000e, et seq., New York State Human Rights Law, N.Y. Exec. Law §§ 390, et seq., action against the enterprise now

known as Verizon Business for sex discrimination, hostile work environment, retaliation,

and Equal Pay Act, 29 U.S.C. §§ 206, et seq., violations (Docket No. 148, 2d Am. Compl.).

To summarize Plaintiff's claims and according to the Second Circuit's decision,

Moll, supra, 760 F.3d at 201-02,

> Moll's story begins in 1997 when Telesector Resources Group, Inc. ("Verizon") promoted her from clerical employee to System Analyst/Sales Engineer in its Buffalo, New York office.  Moll alleges that beginning in 1998 she was subjected to sex-based disparate treatment, a hostile work environment, and retaliation.
>
> Moll alleges that in 1998 and 1999, Daniel Irving, a Senior Systems Analyst, left Moll three inappropriate notes.  And in 1999, while they were on a business trip, Irving called her hotel room repeatedly and asked her to come to his hotel room.  After Irving became her direct supervisor in March 2001, Moll alleges that he left her a note that said he thought about her when he was taking a shower.  Moll also claims that Irving would not permit her to communicate with him by email or telephone; she had to see him in person.  And Moll claims that throughout his tenure as her supervisor, Irving refused to have her assessed for a promotion claiming that there was a promotion freeze.  However, two male colleagues were promoted during this time period.
>
> In March 2002, Irving placed Moll on a counseling plan based on her job performance.  That year Moll was the lowest paid Sales Engineer in the Buffalo office. Moll occasionally worked at home, usually when one of her children was sick. In May 2002, however, Irving informed Moll that she could no longer work at home even though, according to Moll, her male counterparts continued to do so. Moll was denied a request to take vacation on July 5, 2002.  Yet, Moll alleges, male colleagues with less tenure were granted the same vacation request.  Moll also claims that she and other women in the office were excluded from work-related social events, including attending professional hockey games.
>
> In January 2003, Christopher Gaglione became her supervisor.  In July 2003, Gaglione promoted Moll to Sales Engineer II.
>
> On September 19, 2003, Moll filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been "subjected to different terms and conditions of employment than similarly situated male employees" and a "hostile work environment."  J.A. 67.  Moll also complained that she had been promoted "to a lower level position than similarly situated males" and generally alleged retaliation after complaining to Verizon management of sexual discrimination and

harassment. Id.  The EEOC issued a Notice of Right to Sue dated August 9, 2004.

On October 5, 2004, Moll filed a complaint with the district court, alleging that she had been (i) subjected to gender-disparate treatment; (ii) subjected to a sexually hostile work environment; (iii) retaliated against; and (iv) paid less than male employees, in violation of Title VII of the Civil Rights Act of 1964, § 102(a) of the Civil Rights Act of 1991, the New York State Human Rights Law ("NYSHRL"), and the Equal Pay Act ("EPA").

In December 2004, Verizon transferred the Sales Engineers in the Buffalo office to the Syracuse office, purportedly because the company wanted all of the Sales Engineers to work out of the same office as their supervisors. Moll alleged that this transfer was retaliation for her lawsuit. Verizon offered Moll three options:  (1) transfer to Syracuse; (2) find a new job at Verizon; or (3) take a severance package.  Moll claims she had no choice but to transfer to Syracuse because she could not find another job at Verizon and Verizon refused to give her details regarding her severance package.  Moll was told that she must report to the Syracuse office when she was not in customer meetings and that she could not work from home. Moll eventually took disability leave because of the "overwhelming stress and anxiety" she experienced.

See also Moll v. Telesector Resources Group, Inc., 04CV805, 2012 U.S. Dist. LEXIS 74949, at *2-44 (W.D.N.Y. May 30, 2012) (Skretny, C.J.) (Docket No. 117) (more detailed recitation of facts).

Defendant moved to dismiss (Docket No. 2), Moll, supra, 760 F.3d at 202, and this Court granted that motion in part (Docket No. 13, 2005 U.S. Dist. LEXIS 43605).  The Second Circuit vacated this decision, 760 F.3d 198.  Meanwhile defendant answered the then-surviving claims (Docket No. 14).   The case was referred to Magistrate Judge Schroeder for pretrial proceedings (Docket No. 15; see also Docket No. 136).

On August 29, 2005, Plaintiff was placed on disability (to be discussed in considering Plaintiff's motion to dismiss the counterclaims) until March 6, 2006 (Docket No. 215, Pl. Statement ¶¶ 7, 21, 13-14).  Meanwhile, in February 2006, Plaintiff's job was transferred to Syracuse, Moll, supra, 760 F.3d at 202.  A year later, Moll was told that

6

there would be a Reduction in Force and that she would be terminated because of her performance was below that of her peers, and she was terminated on February 7, 2007, id.

On April 17, 2008, Plaintiff amended her Complaint (Docket No. 57) adding allegations surrounding her transfer to Syracuse and termination, see id.  Defendant answered this amended pleading and alleged a counterclaim (Docket No. 58).  Plaintiff replied to the counterclaim (Docket No. 59).

On September 16, 2011, Defendant moved for summary judgment (Docket No. 101), id. at 203.  This Court granted the motion dismissing all claims (Docket No. 117, 2012 U.S. Dist. LEXIS 74949 (May 30, 2012).  The Second Circuit vacated this decision, Moll, supra, 760 F.3d 198 (2d Cir. 2014).  The parties stipulated to dismiss Plaintiff's promotion delay claim and Defendant's counterclaim (without prejudice to renew if Plaintiff's appeal restored the case) following granting Defendant's summary judgment motion (Docket No. 129).

B.  On Remand:  Second Amended Complaint (Docket No. 148) and Proceedings to Motions for Summary Judgment

The Second Circuit issued its mandate (Docket No. 134) and following subsequent status conferences (Docket Nos. 138-39, 145, 147) including a mediation session (see Docket No. 146), Plaintiff amended the Complaint again (Docket No. 148).  There, the First Cause of Action alleges sex discrimination against Plaintiff, discriminating against her in compensation, terms, conditions, privileges of employment and in her termination (Docket No. 148, 2d Am. Compl. ¶¶ 102-11).  The Second Cause of Action also alleges sex discrimination but in violation of the New York State Human Rights Law, invoking this

7

Court's supplemental jurisdiction, 28 U.S.C. § 1367(a) (id. ¶¶ 114-20).  The Third Cause of Action alleges that Defendant maintained and did not correct a hostile work environment (¶¶ 123-30).  The Fourth Cause of Action, again asserting supplemental jurisdiction, alleges hostile work environment in violation of the New York Human Rights Law (id. ¶¶ 133-38).  The Fifth Cause of Action alleges Defendant retaliated against Plaintiff for complaints against their alleged discriminatory practices (id. ¶¶ 141-46), while the Sixth Cause of Action alleges similar retaliation in violation of New York Human Rights Law (id. ¶¶ 149-55).  Finally, the Seventh Cause of Action alleges violation of the Equal Pay Act (id. ¶¶ 158-65).  Plaintiff seeks damages of $3 million, declaratory and injunctive relief, and recovery of her attorneys' fees and costs (id.) and  a jury trial (id. ¶¶ 111, 121, 131, 193, 147, 156, 166).

Defendant answered (Docket No. 149), asserting in Count I of its counterclaims that Plaintiff falsely claimed she was disabled and (while on disability leave in 2005-06) attended college, thus Plaintiff enjoyed an unjust enrichment of receiving full benefits while on claimed disability (id., Counterclaim ¶¶ 6-21).  Count II of the counterclaims alleges that Plaintiff fraudulently misrepresented her health, leading Defendant to incur $40,000 in damages in paying her disability benefits (id., Counterclaim ¶ 23).  Plaintiff replied to the counterclaims (Docket No. 150).

After additional discovery (see Docket Nos. 151, 152, 153-211), the parties filed their respective motions for summary judgment (Docket Nos. 215, 216).

C.  Defendant's Motion (Docket No. 216)

    1.  Defendant's Arguments

Defendant Verizon Business argues that, despite the remand, Plaintiff still fails to establish the elements for her claims (Docket No. 217, Def. Memo. at 1).  For her hostile work environment, Verizon Business contends Plaintiff has not sufficiently established a severe or pervasive conduct despite her itemization (id. at 12).  Plaintiff listed incidents over nine years with periods of no challenged actions or isolated, challenged acts (id.). Verizon Business terms these incidents to be episodic and thus not actionable under Title VII and the New York Human Rights Law (id. at 12-13).  Plaintiff merely cites to instances male co-workers received a benefit she did not or incidents she was not involved in (id. at 13).

    2.  Response and Reply

Plaintiff counters that there are material issues of fact whether there was a hostile work environment (Docket No. 223, Pl. Memo. at 15-19), disparate treatment and retaliation claims (id. at 21-34).  Plaintiff charges that she perceived the hostile environment and did not need to prove this by complaining at every instance (id. at 20-21).

D.  Plaintiff's Motion Dismissing the Counterclaims (Docket No. 215)

    1.  Plaintiff's Arguments

Upon Plaintiff's Statement of Uncontested Material Facts (Docket No. 215), save when contested to by Verizon Business (Docket No. 220) and Verizon Business's submitted additional facts (not contested by Plaintiff) (id. ¶¶ 22-54), Plaintiff states that she was employed by Verizon Business (and its corporate predecessors) from 1990 to

2007 (Docket No. 215, Pl. Statement ¶ 1).  Plaintiff obtained short-term disability coverage for mental health treatment and paid her salary continuation benefits (Docket No. 215, Pl. Memo. at 2-4).  In June 2004, Plaintiff began treatment with Dr. Maria Nickolova for stress, depression, and anxiety due to harassment, discrimination, and retaliation at work (Docket No. 215, Pl. Statement ¶¶ 4, 7).  Verizon Business disputes the reason for Plaintiff's treatment and argues that Plaintiff misled her treating professionals in claiming that she was unable to function (Docket No. 220, Def. Response Statement ¶¶ 4, 7).  Dr. Nickolova prescribed anti-anxiety medication and referred her to a counselor, with Plaintiff seeing Dr. Nickolova monthly and the counselor every other week (Docket No. 215, Pl. Statement ¶¶ 5-6).  On August 29, 2005, Dr. Nickolova took Plaintiff off work (Docket No. 215, Pl. Statement ¶ 7); Verizon Business contends that the diagnosis leading to work disability is based upon Plaintiff's description of her symptoms and that Dr. Nickolova had no independent means of confirming what Plaintiff told her (Docket No. 220, Def. Response Statement ¶ 7).  After Plaintiff was removed from work filed for disability benefits pursuant to Verizon Business's short-term disability plan (Docket No. 215, Pl. Statement ¶ 8).  Verizon Business notes that Dr. Nickolova completed an attending physician statement finding that Plaintiff could not return to work, that Plaintiff had limitations as difficulties in concentration, attention, focus, suffered from fatigue and insomnia, and she was not motivated (Docket No. 220, Def. Response Statement ¶ 27; see also id. ¶ 28 (subsequent physician statement)).  Verizon Business's plan administrator, Unum Provident, approved Plaintiff's benefit claim based upon Dr. Nickolova's representations (see Docket No. 220, Def. Response Statement ¶ 9; cf. Docket No. 215, Pl. Statement ¶ 9).

In October 2005, Plaintiff began treatment with Mary Ellen Kranock, LCSW-R (Docket No. 215, Pl. Statement ¶ 10).  Unum Provident also obtained copies of medical information from Kranock regarding Plaintiff's treatment (see id. ¶¶ 11, 12); Verizon Business, however, contends that Kranock provided information as disclosed by Plaintiff, which Defendant terms to be false reporting (Docket No. 220, Def. Response Statement ¶¶ 11, 12).  Based on medical information from Dr. Nickolova and Kranock, disability benefits continued to Plaintiff through March 6, 2006 (Docket No. 215, Pl. Statement ¶ 13; but cf. Docket No. 220, Def. Response Statement ¶ 13), with Plaintiff receiving salary continuation benefits (Docket No. 215, Pl. Statement ¶ 14; but cf. Docket No. 220, Def. Response Statement ¶ 14).  Verizon Business contends, however, that Plaintiff duped her psychiatrist, counselor, and clinical social worker into opining that Plaintiff was disabled (Docket No. 220, Def. Response Statement ¶ 14).

During her treatment but before she was disabled, Plaintiff enrolled in an accelerated degree program at Medaille College and Defendant was aware of her enrollment (Docket No. 215, Pl. Statement ¶ 15; id., Pl. Memo. at 4).  Verizon Business contends Plaintiff took three credit hours in August and September 2005 while she claimed to be unable to function (Docket No. 220, Def. Response Statement ¶ 29).  Plaintiff continued to receive disability benefits while enrolled at Medaille (Docket No. 215, Pl. Memo. at 5) and Defendant was aware of both the classes and Plaintiff's disability benefits (id.; id., Pl. Statement ¶¶ 17, 20).  Verizon Business contends that it and Unum Provident was not aware of the demands in the Medaille program (Docket No. 220, Def. Response Statement ¶¶ 15, 17), with references in Plaintiff's medical record to going to college not reflecting the extent of her studies (id. ¶ 17).  Plaintiff also participated in

volunteer activities that Defendant was aware of from her disclosed medical records (Docket No. 215, Pl. Memo. at 5-6; id., Pl. Statement ¶ 19).  Plaintiff volunteered at her daughter's school reading and volunteering in the lunchroom for an hour or two once a week and served as eucharistic minister for her church serving in a nursing home weekly (id. ¶ 19).  Verizon Business counters that this volunteering showed that Plaintiff was not as lethargic as she claimed in her disability application (Docket No. 220, Def. Response Statement ¶ 19).  With these disclosures of attending classes and volunteer work, Dr. Nickolova and Kranock found that Plaintiff still was disabled and could not return to work (Docket No. 215, Pl. Memo. at 3-4, 6).  Plaintiff claims that Kranock recommended that Plaintiff continue her studies since it provided structure in her life while she was on disability (Docket No. 215, Pl. Statement ¶¶ 16, 18).  Verizon Business contends that its agent, Unum Provident, made benefit decisions independent of Defendant (Docket No. 220, Def. Response Statement ¶ 20).  Verizon Business also states that during her disability Plaintiff represented that she was still employed to seek reimbursement for her books (id. ¶ 21).

In Verizon Business's additional facts (Docket No. 220, Def. Response Statement ¶¶ 22-54) it notes that Plaintiff's duty station relocated from Buffalo to Syracuse in early 2005, Verizon Business points out that Dr. Nickolova found that Plaintiff could not work in August of that year (id. ¶¶ 22-23).  Dr. Nickolova based her assessment only upon Plaintiff's statements (id. ¶¶ 24, 26).  Verizon Business then indicates that Plaintiff continued treatment with Dr. Nickolova and claimed that she had difficulty concentrating and lacked motivation while also attending classes at Medaille, getting an A in Ethics in the Workplace (id. ¶¶ 29-31).

Plaintiff moves to dismiss the counterclaim against her, arguing that ERISA 29 U.S.C. §§ 1001, et seq., precluded the counterclaim because Defendant as an ERISA fiduciary could only bring a claim for equitable relief and not for damages, 29 U.S.C. § 1132(a) (id. at 6-8). She next argues that Defendant failed to establish either fraud or unjust enrichment (id. at 9-10). Plaintiff disclosed her attending school and volunteering to Defendant, hence not withholding material facts (id. at 9).

### 2.  Response and Reply

Verizon Business contends that Plaintiff perpetrated a disability fraud (Docket No. 219, Def. Memo. at 3-11) by claiming total disability (id. at 2) while attending college and volunteering (id. at 6-9). Plaintiff did not tell Dr. Nickolova she was attending college while disabled as Dr. Nickolova reported to Unum Provident in a December 2005 disability assessment form (id. at 7).

Verizon Business next argues that Plaintiff waived her ERISA preemption argument by raising it for the first time in her motion but not in her responding pleadings or subsequent papers (Docket No. 219, Def. Memo. at 11, 12-17). Defendant contends that Plaintiff misrepresented her condition (to her doctor and counselor and ultimately to Defendant) in order to obtain and continue disability benefits while attending college full-time (id. at 18-23). Plaintiff represented that she was disabled to her doctor (that she was unable to focus, function or concentrate) while "living a completely different reality" in attending college classes (id. at 19).

Plaintiff replies that she raised (generally) affirmative defenses denying subject matter jurisdiction and contending that Verizon Business failed to state a cause of action, contending that jurisdictional defenses are not waivable (Docket No. 228, Pl. Atty. Reply

Decl. ¶¶ 3-5, 7; Docket No. 228, Pl. Reply Memo. at 3-4).  Plaintiff argues that the counterclaims are governed by ERISA which preempts state law claims (Docket No. 228, Pl. Atty. Reply Decl. ¶ 6; id., Pl. Reply Memo. at 2-3).  She argues that preemption is not an affirmative (hence waivable) defense (Docket No. 228, Pl. Reply Memo. at 3), 1-5 Moore's Manual:  Federal Practice and Procedure § 5.13[3][b] (2020) (discussing complete preemption for removal purposes).

### III.    DISCUSSION

A. Applicable Standards

   1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in

favor of the opposing party, summary judgment is improper," <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.</u>, 391 f.3d 77, 82,-83 (2d Cir. 2004) (citation omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," <u>Anderson</u>, <u>supra</u>, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," <u>Cordiano v. Metacon Gun Club, Inc.</u>, 575 F.3d 199, 204 (2d Cir. 2009), <u>citing</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting <u>Celotex</u>, <u>supra</u>, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no

genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

As briefly noted above, the Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Absent such an opposing statement, the facts alleged by the movant are deemed admitted.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

### 2.  Title VII

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), Plaintiff bears the burden of demonstrating that sex was a motivating factor in the adverse employment action, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).  She bears the burden of establishing a prima facie case of discrimination, id. at 252-54.  If Plaintiff does so, the burden shifts to Verizon Business to articulate some legitimate, nondiscriminatory reason for its action, id. at 254-56.  If that has been met, the burden shifts back to Plaintiff to show, beyond the prima facie case, that Defendant's

determination was the result of discrimination, id. at 256; see McDonnell Douglas, supra, 411 U.S. at 804-05.

To prove a hostile work environment claim based upon sex, Plaintiff needs to establish that the acts were "sufficiently severe or pervasive 'to alter the conditions of [plaintiff's] employment and create an abusive working environment,'" Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986) (Docket No. 217, Def. Memo. at 6).  Plaintiff also has to establish that the "workplace is permeated with 'discriminatory intimidation, ridicule and insult,'" that is so "severe or pervasive" to create an "objectively hostile or abusive work environment," and plaintiff "subjectively perceive[d] the environment to be abusive," Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993) (quoting Meritor Sav., supra, 477 U.S. at 65, 67) (id.); Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004); Byrne v. Telesector Resources Group, Inc., 339 F. App'x 13, 18 (2d Cir. 2009) (summary Order).  Based upon the totality of the circumstances, Bentivegna v. People's United Bank, No. 2:14-cv-599, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017), to determine whether the misconduct was severe or pervasive, the complained-of behavior was sufficiently frequent, or severe; was physically threatening or humiliating or merely an offensive comment; unreasonably interfered with the victim's work; and caused psychological harm, see Harris, supra, 510 U.S. at 23 (id.). "[O]ffhand comments, and isolated incidents (unless extremely serious)" will not suffice, Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (id.); see Petrosino, supra, 385 F.3d at 223.

Plaintiff also needs to show the existence of a specific basis for imputing the conduct to Defendant employer that created a hostile work environment, Ribis v. Mike Barney Chevrolet-Cadillac, Inc., 03CV6489, 2007 U.S. Dist. LEXIS 1397, at *28

17

(W.D.N.Y. Jan. 8, 2007) (Larimer, J.); Byrne v. Telesector Resources Group, Inc., No. 04CV76, 2007 WL 962929, at *18 (W.D.N.Y. Mar. 29, 2007) (Skretny, J.), aff'd, 339 F. App'x 13 (2d Cir. 2009).  Or, "that a specific basis exists for imputing the conduct that created the hostile environment to the employer,'" Mento v. Potter, No. 08CV74, 2012 WL1908920, at *14 (W.D.N.Y. May 21, 2012) (Skretny, C.J.) (quoting Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir.) (internal quotations and alterations omitted), cert. denied, 540 U.S. 1016 (2003)); see Harris, supra, 510 U.S. at 21.

"'The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement:   the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility.'  Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 188 (2d Cir.2001)," Mento, supra, 2012 WL 1908920, at *14; Bentivegna, supra, 2017 WL 3394601, at *13 (citing cases); see Harris, supra, 510 U.S. at 21-22.  Thus, Plaintiff must "not only allege that she found the environment offensive, but that a reasonable person also would have found the environment to be hostile or abusive," Bentivegna, supra, 2017 WL 3394601, at *13, citing Harris, supra, 510 U.S. at 21-22.

To state a disparate treatment claim in discrimination in compensation or conditions or privileges of employment because of gender under either Title VII or the New York State Human Rights Law, see, e.g., Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *47, Plaintiff again needs to state a prima facie case, when this is done the burden shifts to Verizon Business to show non-discriminatory reason for the action, and the burden shifts back to Plaintiff to establish that Defendant's reason was pretextual id. at *47-48; McDonnell Douglas, supra, 411 U.S. at 802-04.  The prima facie case here is that

18

Plaintiff is a member of a protected class; she is qualified for her position; she suffered an adverse employment action; and the circumstances give rise to an inference of discrimination, see Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *47-48.

Retaliation for asserting employment discrimination claims are also governed by the McDonnell Douglas burden shifting standards, Richardson v. New York Dep't of Correctional Servs., 180 F.3d 426, 443 (2d Cir. 1999) (Docket No. 223, Pl. Memo. at 22). Here, Plaintiff needs to show that she participated in a protected activity, that Defendant knew of the activity; that an employment decision or action disadvantaged Plaintiff; and there was a causal connection between the protected activity and the negative decision, id.; Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *49-50; see Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67-70 (2006).  If that burden is met, Defendant has the burden to establish that nondiscriminatory reason for the decision and, if Defendant does so, the burden shifts back to Plaintiff to establish that the reason is pretextual for impermissible retaliation, Richardson, supra, 180 F.3d at 443 (id.).

These Title VII claims have to be timely.  A charge has to be filed with the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory act, 42 U.S.C. § 2000e-5(e).

3.  New York State Human Rights Law

New York Human Rights Law has the same burden of proof and burden shifting from McDonnell Douglas stated above for Title VII claims, Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000); Moll v. Telesector Res. Group, Inc., No. 04CV805

(Docket No. 117), 2012 U.S. Dist. LEXIS 74949, at *47-49 & 47 n.5 (W.D.N.Y. May 30, 2012) (Skretny, C.J.), rev'd, 760 F.3d 198 (2d Cir. 2014).

      4.  Equal Pay Act

To establish a prima facie case under the Equal Pay Act, Plaintiff has the burden of proving that her work has been performed similar to that performed by employees of the opposite sex involving equal skills, effort, and responsibility, that work was performed under similar working conditions and that the Defendant employer paid different wages to employees of opposite sexes for such work, Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Molden v. United States, 11 Cl. Ct. 604, 612 (1987); Byrne, supra, 2007 WL 962929, at *9; 29 U.S.C. § 206(d)(1) (Docket No. 217, Def. Memo. at 30).  Jobs that are merely comparable are insufficient to state an Equal Pay Act claim, Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) (id.; cf. Docket No. 223, Pl. Memo. at 34); Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (1994).  Once Plaintiff meets this burden, the burden of proof shifts to Defendant to show that one of four statutory exceptions apply, namely the existence of a seniority system, merit system, a system that measures earnings by quantity or quality of production, or a differential based on any other factor other than sex, 29 U.S.C. § 206(d)(1); E.E.O.C. v. Maricopa County Community College Dist., 736 F.2d 510, 513 (9th Cir. 1984).

      5.  Supplemental Jurisdiction

Subject matter jurisdiction may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014).  This Court has

jurisdiction over Verizon Business's counterclaims under its supplemental jurisdiction, 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over <u>all other claims</u> that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," emphasis added) (<u>see also</u> Docket No. 149, Ans. to 2d Am. Compl., Counterclaim ¶ 2, at 35).   This Court may exercise supplemental jurisdiction over otherwise state law claims where they arise from a common nucleus of operative facts from the claims arising under the Court's original jurisdiction, <u>see</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966); <u>Frederick v. State of N.Y.</u>, 232 F. Supp. 3d 326, 332-33 (W.D.N.Y. 2017) (Wolford, J.); <u>Harris v. Jacob Marsh, LLC</u>, No. 12CV356, 2012 WL 3655357, at *2 (W.D.N.Y. July 6, 2012) (Scott, Mag. J.) (Report & Recommendation), <u>adopted</u>, 2012 WL 3655334 (W.D.N.Y. Aug. 23, 2012) (Arcara, J.).

### 6.  Unjust Enrichment and Common Law Fraud

To state a claim for unjust enrichment under New York law (since both parties either reside in or have offices in New York), the litigant must establish (1) enrichment by the other party, (2) at the litigant's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered, <u>Mandarin Trading Ltd. v. Wilderstein</u>, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471 (2011) (citation omitted); <u>Golden Pac. Bancorp v. F.D.I.C.</u>, 273 F.3d 509, 519 (2d Cir. 2001) (applying New York law) (Docket No. 215, Pl. Memo. at 9; Docket No. 219, Def. Memo. at 18). Common law fraud requires the litigant to establish (1) a material, false representation or omission, (2) made with knowledge of its falsity, (3) with an intent to defraud, (4) with reasonable reliance on the representation, and (5) which causes damage to the litigant,

Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 276 (2d Cir. 1992); Katara v. D.E. Jones Commodities, 835 F.2d 966, 970-71 (2d Cir. 1987); Keywell Corp. v. Weinstein, 33 F.3d 159, 163 (2d Cir. 1994) (applying New York law) (Docket No. 215, Pl. Memo. at 9; see Docket No. 219, Def. Memo. at 18).

Defendant argues that courts are reluctant to grant summary judgment dismissing a fraud claim because intent is usually a question of fact (Docket No. 219, Def. Memo. at 18), see Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711-12 (2d Cir. 1991).

B. Dismissal of Counterclaims (Docket No. 215)

First, this Court will address Plaintiff's motion for summary judgment to dismiss Verizon Business's counterclaims (Docket No. 215). This Court considers (sua sponte, see Lyndonville Sav., supra, 211 F.3d at 700-01) whether there is subject matter jurisdiction for Verizon Business's counterclaims, although neither party has raised this issue.  Plaintiff answered the counterclaims and asserted general defenses of lack of subject matter jurisdiction and failure to state a claim (Docket No. 150, Pl. Ans. to Counterclaims ¶¶ 26, 24; cf. id. ¶ 28 (defense that counterclaims were made in retaliation of Plaintiff's Title VII action)).   Plaintiff now merely asserts that Verizon Business's counterclaims lacked a basis for supplemental jurisdiction because the counterclaims were governed exclusively (and preempted) by ERISA (see Docket No. 228, Pl. Atty. Reply Decl. ¶¶ 4-5; Docket No. 215, Pl. Memo. at 6-8; Docket No. 228, Pl. Reply Memo. at 2-6); Plaintiff does not contest whether the counterclaims fall under the nucleus of operative facts for her claims.  Verizon Business has not argued the type of counterclaims it alleges (compulsory or permissive, Fed. R. Civ. P. 13(a), (b)) and only alleged this Court's jurisdiction for the counterclaims under supplemental jurisdiction of 28 U.S.C.

22

§ 1367(a) (see Docket No. 149, Ans. with Counterclaim, Counterclaim ¶ 2).  It does not argue the grounds for subject matter jurisdiction.

To exercise supplemental jurisdiction over Verizon Business's state law counterclaims the facts Defendant alleges here must arise from the common nucleus of operative facts from Plaintiff's claims, see Gibbs, supra, 383 U.S. 715.  Plaintiff here sues for employment discrimination and Verizon Business counterclaims for Plaintiff taking disability benefits fraudulently while attending college and volunteering.   The only common facts are the employment relationship between the parties and Plaintiff's claim that she suffered stress, depression, and anxiety from her claimed harassment, discrimination, and retaliation at work that led to her claiming disability (see Docket No. 215, Pl. Statement ¶ 4).

The issue is whether Verizon Business's unjust enrichment and fraud counterclaims is so related to Plaintiff's employment discrimination claims to make them the same case or controversy, see, e.g., Harris, supra, 2012 WL 3655357, at *2 (finding that debt collector's counterclaim to collect a debt was not related to debtor's Fair Debt Collection Practices Act action, dismissing counterclaim); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 467-69 (S.D.N.Y. 2008) (court lacked subject matter jurisdiction over defendant employer's faithless servant counterclaim in overtime compensation class action).   None of Verizon Business's claims about abuse of its disability benefit program are relevant to Plaintiff's employment discrimination claims, see Torres, supra 628 F. Supp. 2d at 468.  The only connection between the counterclaims and the claims is Plaintiff's employment, which by itself does not provide a common nucleus of operative facts, id. (the "slender reed" of the employment relationship "will not

23

support the finding that the counterclaims are compulsory"); see also Wilhelm v. TLC Lawn Care, Inc., No. 07 Civ. 2465(KHV), 2008 WL 640733, at *3 (D. Kan. Mar. 6, 2008) (dismissing counterclaim where defendant relied solely upon employment relationship and made no specific factual connection between the counterclaims and plaintiff's FLSA claim), but both sets of claims address different aspects of her employment.  The unjust enrichment and fraud counterclaims arise when Plaintiff was on disability and was not working in 2005-06, months after commencement of this action.  Plaintiff's employment discrimination allegedly occurred before Plaintiff was placed on disability and after she returned, see Moll, supra, 760 F.3d at 201-02, with Plaintiff placed on a reduction in force after she returned from disability and her position being transferred to Buffalo, id. at 202.

By contrast, Plaintiff's New York State Human Rights Law claims share the same nucleus of operative facts for her Title VII claims that this Court can exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998).

These counterclaims are similar to those asserted in Torres.  There, plaintiffs sought to recover overtime as managerial employees, 628 F. Supp. 2d at 454. Defendants eventually stated counterclaims that alleged faithless servant claim against two of the plaintiffs, id. at 466.  The district court first found that the counterclaim was not compulsory but was permissive counterclaim under Rule 13(a) because the counterclaim did not arise from the transaction or occurrence from the original claims that there was no logical relationship between plaintiffs' overtime claim and defendants' faithless servant counterclaim, id. at 467-68, rejecting the "slender reed" of the employer-employee relationship as a basis for compulsory counterclaim, id.  The essential facts in that case

were "'not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency,'" id. at 468 (quoting Jones v. Ford Motor Credit Co., 358 F.3d 205, 210 (2d Cir. 2004)).   The district court in Torres then held that it lacked supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367, 628 F. Supp. 2d at 468-69. The court found that defendants did not show that the faithless servant counterclaim was relevant to plaintiffs' overtime claims, id. at 468.

Here, Verizon Business's counterclaims involve different rights, different interests, and different underlying facts, see Bu ex rel. Bu v. Beneson, 181 F. Supp. 2d 247, 254 (S.D.N.Y. 2001).  Plaintiff is claiming employment discrimination and harassment due to sex, while Verizon Business's counterclaims stem from the period Plaintiff was on disability from her job.  She is not claiming continued discrimination during her disability period of August 2005 to March 2006; Plaintiff's claims straddle this period with harassment and discrimination that allegedly led to Plaintiff's illness and disability and her transfer to Syracuse and eventual reduction in force after returning to work.  The only other operative facts common to the claims and counterclaims are the employment relationship and Plaintiff's claim that the discrimination led to her illness and eventual disability.   The counterclaims are tangential to these claims.   Verizon Business's counterclaims involve Plaintiff's activities after being deemed disabled during the period. These counterclaims do not share a nucleus of operative facts for this Court to have supplemental jurisdiction over them, see Torres, supra, 628 F. Supp. 2d at 468.

Thus, for a different reason, Plaintiff's motion for summary judgment (Docket No. 215) dismissing the counterclaims is **granted**.  This Court need not address Plaintiff's argument that ERISA preempts Verizon Business's counterclaims or that Verizon

Business failed to assert fraud or unjust enrichment claims because this Court lacks subject matter jurisdiction over these counterclaims.

This Court next turns to the motion of Verizon Business for summary judgment dismissing Plaintiff's claims.

C. Dismissal of Complaint (Docket No. 216)

Verizon Business argues that Plaintiff was given a second chance to assert her claims (following Verizon Business's first motion for summary judgment and remand following appeal) but she "cannot demonstrate that she was subjected to a gender-based hostile work environment, gender-based discrimination or retaliation (Docket No. 217, Def. Memo. at 1). Verizon Business now argues that Plaintiff cannot establish that the conduct she complains of was hostile work environment was so severe or pervasive to state a hostile environment (id. at 1, 5-13). Next, Plaintiff cannot establish a prima facie case for disparate treatment and Verizon Business can articulate legitimate, nondiscriminatory reasons for many of the events which Plaintiff complains (id. at 1, 13-15). Verizon Business also argues that Plaintiff cannot establish a prima facie case of retaliation and Verizon Business can articulate legitimate, nondiscriminatory reasons for the alleged retaliation (id. at 1, 22-23, 23-26). As for her termination, Verizon Business argues that Plaintiff is not claiming it was due to her gender hence she fails to state a discrimination claim therefrom (id. at 26-29). Finally, Verizon Business claims that Plaintiff's pay inequity claim fails because Plaintiff cannot establish that she performed equal work on jobs requiring equal skill, effort, and responsibility in comparison with male employees and Verizon Business again can give nondiscriminatory reasons for the alleged pay discrepancy (id. at 1, 29-34).

26

Before addressing the present motion, a look back at Defendant's initial motion for summary judgment and the Second Circuit's remand mandate is in order.

1.  First Motion for Summary Judgment (Docket No. 101)

For Verizon Business's first motion, this Court considered separately thirteen different aspects of Plaintiff's discrimination, hostile work environment, harassment, and retaliation claims, Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *50-84, and her claim of unequal pay for equal work, id. at *84-90.  For Plaintiff's delayed promotion claim, this Court found that she established a prima facie case of promotion discrimination, id. at *50-53, that Verizon Business failed to establish a nondiscriminatory reason for not promoting Plaintiff, and that summary judgment was denied as to that claim, id. at *53-54.  Verizon Business later states that this claim was settled (Docket No. 217, Def. Memo. at 2, 4 & n.2).  As for Plaintiff's claims arising from the Syracuse job transfer, id. at *54-62, Verizon Business submitted evidence that deprived Plaintiff of showing that a material issue of fact existed to preserve this claim, id. at *62.  As for Plaintiff's removal from the University at Buffalo's account, id. at *62-64, this Court found that Plaintiff had not stated a prima facie case of retaliation, id. at *63, 64.  On Plaintiff being placed on a counseling plan at work, id. at *64-67, she failed to establish a prima facie case of discrimination, id. at *66-67.  As for her termination, id. at *67-69, Plaintiff failed to establish a prima facie case and did not argue her termination was based on gender discrimination and appeared abandoned, id. at *67-68, 67 n.8, and alternatively Verizon Business presented nondiscriminatory reason for Plaintiff's termination, id. at *68.  This Court found that there was no inference of discrimination for Plaintiff's sales manipulation claim, id. at *70-71, for the change of Plaintiff's job duties, id. at *71, job reassignments, id. at *72-74.  As for

27

Plaintiff's denied requests to work remotely and requirement to use vacation time for her move, this Court held that this denial is not an adverse employment action, id. at *76-77, 78-81.  As for the equal pay claim, id. at *84-90, this Court found that Verizon Business presented legitimate business reasons for the alleged pay disparity, id. at *88-90.

The Second Circuit vacated granting Verizon Business's motion to dismiss and remanded, holding that this Court should have considered all incidents in their totality, including sex-neutral incidents, to meet Verizon Business's argument that Plaintiff's claims were not sufficiently pervasive or severe to support her claim, Moll, supra, 760 F.3d at 200, 204.  The circuit court remanded for discovery motions and left this Court "free to re-consider summary judgment for Verizon," id. at 204, instructing this Court to consider the affidavit of Christopher Gaglione that Plaintiff's transfer was motivated by retaliatory intent despite the contradictory deposition testimony, id. at 204-05; but cf. Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *61.  The Second Circuit noted two possible explanations for Gaglione's inconsistency:  he was deposed while employed by Verizon and made his statement after they terminated him.  Either he was inhibited during his deposition due to his employment or he made his later statement to get even with Verizon for terminating Gaglione.  Moll, supra, 760 F.3d at 206.  Gaglione stated in the later declaration that he regretted that he did not do more to help Plaintiff and was concerned when he was deposed about losing his job with Verizon, id.  The Second Circuit held that the sham issue doctrine did not apply to discredit Gaglione's testimony on summary judgment, id.

2.  Present Motion for Summary Judgment (Docket No. 216)

a.      Byrne

28

Verizon Business urges that this Court see the factual contentions raised unsuccessfully in the Byrne v. Telesector Resources case (Docket No. 217, Def. Memo. at 8, citing Byrne v. Telesector Resources Group, Inc., No. 04CV76, 2007 WL 962929, at *19 (W.D.N.Y. Mar. 29, 2007) (Skretny, J.), aff'd, 339 F. App'x 13 (2d Cir. 2009) (Summary Order)) and conclude that Plaintiff here similarly fails to allege a prima facie case for hostile work environment (id. at 8-13).   There, this Court did hold that Byrne, for conduct against other female employees of Defendant and not against herself, alleged incidents that were "not of sufficient severity or frequency to create an abusive working environment," 2007 WL 962929, at *19.   Byrne complained that she was subjected to unwelcome comments, insults, and other sexually offensive conduct that created a hostile work environment, id. at *17; see also id. at *17-18 & 18 n.12 (listing incidents).   That opinion did not state that Moll was one of the female employees subjected to unwarranted comments or attention.   Moll in this case cites some of the same incidents Byrne does (such as the 2002 "hooters" comment to a third female employee, the 2003 discussion about one employee becoming a father and not being able to have sex, another employee stating that his fax number is 25-PENIS) (compare Docket No. 223, Pl. Memo., Ex. A, List of Acts, with Byrne, supra, 2007 WL 962929, at *17, 18; Byrne, supra, 339 F. App'x at 18).   This Court held that the enumeration of Byrne's complaints was not sufficient to state a hostile work environment claim, id. at *19.   The Second Circuit affirmed in a Summary Order, stating that "the standard for establishing actionable sexual harassment in the workplace is an environment 'permeated with discriminatory intimidation that [is] sufficiently severe or pervasive to alter the conditions of [the] work environment," 339 F. App'x at 18 (quoting Petrosino, supra, 385 F.3d at 221).   The Second Circuit dismissed

this evidence of coworker incidents because they "involve isolated incidents that do not rise to a sufficiently serious level to manifest a work environment 'permeated with discriminatory intimidation,'" id. (again quoting Petrosino, supra, 385 F.3d at 221).  The Second Circuit however, expressly declined to state its views on the merits of Moll's present claims, "but conclude[d] only that the allegations of sexual harassment experienced by Moll or other female co-workers that Byrne submitted as evidence in this case are insufficient to amount to a hostile work environment," id. at 19 (emphasis added).  While informative, Byrne is distinguishable by the evidence presented in that case as opposed to what Moll produced here.

     b.  Hostile Work Environment

Thus the issue is whether Plaintiff has alleged a prima facie case or at least alleged material issue of fact whether her work environment was pervasively or severely hostile.  The cases noted by this Court in Byrne in finding the evidence there failed to show pervasive or severe conduct had episodic events or were deemed merely offensive, Byrne, supra, 2007 WL 962929, at *19 (citing Leibovitz v. New York City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001); Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999); Ogbo v. New York State Dep't of Fin., No. 99 Civ. 9387(HB), 2001 U.S. Dist. LEXIS 12920, at *23 (S.D.N.Y. Aug. 28, 2001), aff'd, 45 F. App'x 58 (2d Cir. 2002)), or were distinguished because there were constant use of explicit language or incidents on a daily basis, id. (citing Valentine v. New York, No. 94 CV 3911, 1997 U.S. Dist. LEXIS 24059 (E.D.N.Y. Sept. 9, 1997); Shull v. Rite Aid Corp., 94 Civ. 8552, 1997 U.S. Dist. LEXIS 7609 (S.D.N.Y. May 30, 1997); Pascal v. Storage Tech Corp., 152 F. Supp.2d 191 (D. Conn. 2001)).  In Moll's case at bar, this Court has more than the five to

seven (if included the footnoted incidents that were not plead in Byrne's Complaint, Byrne, supra, 2007 WL 962929, at *18 n.12) incidents.  Plaintiff here has present incidents from 1998 to 2003, some (as just noted) were alleged by Byrne in her case (e.g., Docket No. 223, Pl. Memo., Ex. A).

The parties list a series of incidents from 1998 to 2003 that Plaintiff alleges manifested a hostile environment (compare Docket No. 223, Pl. Memo. at 2-15, Ex. A, with Docket No. 217, Def. Memo. at 8-11).  Verizon Business argues that Plaintiff did not complain about some of the incidents, diminishes the severity of individual incidents, some showed that male workers gaining benefits female workers did not, or in totality did not show pervasive or severe conduct to state a hostile work environment claim (Docket No. 217, Def. Memo. at 8-11, 12-13).  Plaintiff replies that she did lodge complaints over her tenure at Verizon (Docket No. 223, Pl. Memo. at 20).  Verizon Business stressed that other incidents did not involve her (Docket No. 217, Def. Memo. at 12), but as instructed by the Second Circuit both in this case, 760 F.3d at 203, and in Byrne, 339 F. App'x at 18-19, the totality of incidents (sex-neutral ones, those involving co-workers that Plaintiff was aware of) are relevant.  Verizon Business argues that Plaintiff has not shown sufficient frequency or severity to state this claim (id. at 13).

Around Christmas of 1998, Plaintiff alleges that a male co-worker stated to another female co-worker that she was working from home because he heard "bedsprings creaking" (Docket No. 221, Pl. Counterstatement ¶ 20; Docket No. 223, Pl. Memo. Ex. A). The parties dispute whether Plaintiff recalls an incident of sexual harassment in 1998 (cf. Docket No. 216, Def. Statement ¶ 20; Docket No. 217, Def. Memo. at 8).

In 1999, Plaintiff alleges that Dan Irving repeatedly called Plaintiff while she was in a multiple day training asking that she come to his hotel room (Docket No. 221, Pl. Counterstatement ¶ 21; Docket No. 223, Pl. Memo., Ex. A).  Verizon Business minimizes this incident (and three other isolated incidents with Irving) arguing that Plaintiff had no further contact with Irving from 1999 to 2001 (Docket No. 217, Def. Memo. at 8-9).

In January 2000, Plaintiff sought hockey tickets to take customers to professional games, but she was denied by Michael McGowan claiming that because Plaintiff was pregnant in 2000 that she was too tired (Docket No. 221, Pl. Counterstatement ¶¶ 28, 33).  Verizon Business contends this denial happened only once (Docket No. 217, Def. Memo. at 9; Docket No. 216, Def. Statement ¶¶ 33-34).  In 2003, Plaintiff alleged that Verizon Business acquired hockey tickets and gave them to male employees, but these tickets were purchased by the employees themselves (Docket No. 216, Def. Statement ¶¶ 156-57), with Verizon Business allowing the employees to expense the purchase (id. ¶ 158).  Irving made the purchase and testified that he offered extra tickets to all in the office (id. ¶ 159).  Plaintiff counters that Irving did not offer these tickets to female employees to entertain their clients (Docket No. 221, Pl. Counterstatement ¶¶ 157, 159).

When Plaintiff returned from maternity leave, she accused Mike Finnegan of calling her and another female co-worker a "hottie" (Docket No. 221, Pl. Counterstatement ¶ 28; Docket No. 223, Pl. Statement, Ex. A).  Verizon Business contends that Plaintiff did not tell Finnegan to stop making that comment or complain about it (Docket No. 217, Def. Memo. at 9; Docket No. 216, Def. Statement ¶ 45).

Plaintiff was questioned by Irving whether she had an affair with another co-worker (Docket No. 221, Pl. Counterstatement ¶ 28; Docket No. 223, Pl. Statement, Ex. A).

32

Verizon Business contends that the allegedly objectionable comments stopped in the fall of 1999 when Plaintiff became pregnant (Docket No. 216, Def. Statement ¶ 28). Plaintiff was in conversations where male employees commented on the age and attractiveness of female employees (Docket No. 221, Pl. Counterstatement ¶ 28). She also was in conversations with a female coworker who reported that male coworker asked to come to her hotel room during a sales meeting (reminiscent of Plaintiff's incident) (id.) or later incident involving another male co-worker who made comments about her appearance, analogizing her to a "Bond girl" (Docket No. 223, Pl. Memo., Ex. A; Docket No. 221, Ex. A, Pl. Decl. ¶ 58). That employee, Sara DeLena, later told Plaintiff that DeLena's male manager said DeLena should start exercising, implying that DeLena was overweight (Docket No. 223, Pl. Memo., Ex. A, Docket No. 221, Ex. A, Pl. Decl. ¶ 65).

In April or May of 2001 after Plaintiff returned from maternity leave, Irving left a note on Plaintiff's desk saying that he thought about her while he was in the shower (Docket No. 221, Pl. Counterstatement ¶ 30), Verizon Business terms it a single note (Docket No. 217, Def. Memo. at 9; Docket No. 216, Def. Statement ¶ 30) which Plaintiff did not complain about (Docket No. 216, Def. Statement ¶ 31; Docket No. 217, Def. Memo. at 9). In June 2001, Irving began to require Plaintiff personally come to him with her questions and could not use email or voicemail to contact him (Docket No. 221, Pl. Counterstatement ¶ 66), with this ban on email and voicemail applicable for her only with Irving until he left Verizon Business in December 2002 or January 2003 (id.). Verizon Business contends that Irving required other subordinates to "cool the e-mails" to him (Docket No. 217, Def. Memo. at 9; Docket No. 216, Def. Statement ¶ 66). Plaintiff admits that others received Irving's message to restrict emails to him (Docket No. 221, Pl.

Counterstatement ¶ 66) but Irving had personally asked Plaintiff to see him in person with her questions (id.). In January 2002, Irving asked Plaintiff to come back to work with him at night, while they were alone in the office (id. ¶ 82). Plaintiff unsuccessfully requested a promotion in 2001 and 2002, but Irving lacked the authority to promote and promotions were frozen for all employees at that time; Verizon Business contends Plaintiff admitted that there was a hiring freeze and notes a male employee who also sought a promotion at that time was told about the freeze (Docket No. 216, Def. Statement ¶¶ 40-41, 38-39; Docket No. 217, Def. Memo. at 9).

In February or March 2002, with a group of coworkers talking with Plaintiff Irving walked up to a female worker, looked at her breasts, and said "hooters" (id. ¶ 116; see Byrne, supra, 2007 WL 962929 at *17). In May 2002, Irving also denied Plaintiff leave to work from home from that date (Docket No. 221, Pl. Counterstatement ¶ 118) so Irving could continue to see her (Docket No. 223, Pl. Memo., Ex. A). Verizon Business argues that, due to attendance problems in the unit, no employees would be allowed to work from home (Docket No. 217, Def. Memo. at 10; Docket No. 216, Def. Statement ¶¶ 117-18). In October 2002, Irving followed Plaintiff at a business lunch and when asked (because other employees did not have similar accompaniment) Irving claimed that he wanted to "develop" Plaintiff (Docket No. 221, Pl. Counterstatement ¶ 125). Verizon Business argues that Plaintiff's meeting had canceled, and Irving treated her and DeLena to lunch (Docket No. 216, Def. Statement ¶ 125; Docket No. 217, Def. Memo. at 10). During an equal employment opportunity office training on discrimination, retaliation, and harassment attended by Irving, Irving laughed and mocked the vignettes presented,

34

Plaintiff then complained of Irving's behavior and itemized instances of harassment and discrimination (id. ¶ 71; Docket No. 221, Ex. Z).

In early 2003, Finnegan was having a conversation with new father David Jager that Plaintiff overheard, with Finnegan and Jager discussing that Jager could not have sex with his wife (id. ¶ 144; see Byrne, supra, 2007 WL 962929 at *17). Later in 2003, Plaintiff learned that Finnegan was giving out his work and fax number as "25-PENIS" (Docket No. 221, Pl. Counterstatement ¶ 144; see Byrne, supra, 2007 WL 962929 at *18).

In 2005, Plaintiff's duty station was reassigned to Syracuse. She contends that she (and Byrne) were reassigned in retaliation and to compel them to leave the unit (Docket No. 223, Pl. Memo. at 10). Verizon Business refutes this, contending that two male employees were also transferred, and Plaintiff's actual relocation was delayed allowing Plaintiff to work from home and then for her disability leave (Docket No. 217, Def. Memo. at 11; Docket No. 216, Def. Statement ¶¶ 190, 193, 199-202). After Plaintiff returned from disability leave and due to a merger of Verizon with MCI Plaintiff was reassigned to Buffalo and she was allowed to report to Buffalo for five months but was reassigned to the Amherst office (Docket No. 217, Def. Memo. at 11; Docket No. 223, Pl. Memo. at 12).

On Verizon Business's 2007 reduction in force, Defendant argues that it impacted male and female employees while Plaintiff contends that it was retaliatory (Docket No. 217, Def. Memo. at 11; Docket No. 216, Def. Statement ¶¶ 253-63, 271). Plaintiff contends that she was terminated five months after she told her supervisor of this lawsuit and two months after appearing at depositions (Docket No. 223, Pl. Memo. at 14).

Applying the non-exclusive factors Justice Sandra Day O'Connor listed to determine whether an environment is hostile, the frequency and severity of the incidents here does not provide sufficient evidence to establish material issues of fact. Plaintiff was not physically threatened. While the statements to her or that she heard about other female co-workers were puerile, they were merely offensive rather than humiliating. These incidents did not unreasonably interfere with Plaintiff's work. Plaintiff sought psychological treatment in 2005 due to her discrimination and harassment (Docket No. 221, Pl. Counterstatement ¶ 219; Docket No. 223, Pl. Memo. at 21) although Verizon Business disputes whether Plaintiff required treatment or if such treatment was due to the causes claimed.

Verizon Business argues that Plaintiff needed to complain to have incidents matter for her hostile work environment claim (Docket No. 217, Def. Memo. at 8-11, 12-13), which Plaintiff denies (Docket No. 223, Pl. Memo. at 20-21), although she does not track incident-by-incident whether she complained. Whether Plaintiff complained may go to the subjective feelings about the hostility of her workplace, see Bentivegna, supra, 2017 WL 3394601, at *14 (Docket No. 223, Pl. Memo. at 21). In Bentivegna, the court found that the plaintiff "presented sufficient evidence to allow a trier of fact to conclude that she subjectively perceived her work environment as hostile," id., based on plaintiff complaining occasionally and later filed a formal complaint even if she did not complain about every incident, id. Here, Plaintiff complained later of the incidents over the nine-year period at issue (Docket No. 221, Pl Counterstatement ¶¶ 22, 25-26, 31; Docket No. 222, Exs. XX, VV, at 290-91; Docket No. 223, Pl. Memo. at 20-21) although she did not object at every incident. In some instances, Plaintiff would walk away from the

comments but later complained to an EEO investigator (Docket No. 221, Pl. Counterstatement ¶¶ 25, 31).  Plaintiff has presented sufficient evidence of her subjective belief that the environment was hostile.

As for imputation to Defendant employer, Plaintiff argues that Irving's actions as a supervisor are presumed imputed to Verizon Business, Gorzinski v. JetBlue Airways Corp., 596 F.3d 93, 103 (2d Cir. 2010) (Docket No. 223, Pl. Memo. at 19).

The Second Circuit mandated on remand that this Court consider Plaintiff's allegations in their totality, both sexually offensive and facially neutral conduct and incidents to determine whether Plaintiff alleged a prima facie case of hostile work environment, Moll, supra, 760 F.3d at 200.  This Court has considered Plaintiff's allegations in their totality, considering the innocuous and the allegedly offensive and finds that Plaintiff still has failed to allege a prima facie case of a hostile work environment at Verizon during her tenure.  In sum, Plaintiff raises issues of fact as to her subjective belief that her work environment was hostile and that Verizon Business was responsible through imputation.  Plaintiff, however, has not established the existence of material issue of fact of the objective basis for hostile work environment given the number and frequency of incidents presented by Plaintiff.  Therefore, Plaintiff has not established a prima facie case to have the burden of proof shift to Verizon Business.  Verizon Business's motion for summary judgment dismissing the hostile work environment claim (Docket No. 216) is **granted**.

c.  Disparate Treatment and Retaliation

This Court addressed Plaintiff's disparate treatment and retaliation claims, granting Verizon Business summary judgment, <u>Moll</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 74949, at *47-84, which found that Plaintiff failed to establish these claims.  The Second Circuit vacated that judgment but left for this Court on remand to re-consider summary judgment, <u>Moll</u>, <u>supra</u>, 760 F.3d at 204.  The one open issue on remand is how this Court is to consider the inconsistent testimony of Gaglione, <u>see id.</u> at 204-06, which addresses whether Verizon Business retaliated against Plaintiff in transferring her to Syracuse.

Verizon Business argues that, despite this remand, that Plaintiff has not presented new evidence to support these claims (Docket No. 217, Def. Memo. at 13).  Plaintiff counters that the Second Circuit vacated this Court's 2012 summary judgment Decision and Order, <u>Moll</u>, <u>supra</u>, 760 F.3d at 204, concluding the effect of the vacatur is to treat the 2012 Decision and Order as a nullity (Docket No. 223, Pl. Memo. at 26, citing <u>United States v. Munsingwear, Inc.</u>, 340 U.S. 36, 39 (1950)).

(1) Transfer to Syracuse

Plaintiff argues that the transfer to Syracuse was discriminatory and in retaliation. Taking up the discrimination claim, Verizon Business argues that male and female employees were transferred to Syracuse and, like Plaintiff, some of those Buffalo male employees never actually reported to Syracuse (Docket No. 217, Def. Memo. at 23-25). Since Plaintiff never appeared in the Syracuse office (either by teleworking or scheduling appointment exclusively in Buffalo and later going on disability leave, findings not challenged by the Second Circuit, <u>Moll</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 74949, at *55-57

(see id. at 24-25)) and Plaintiff was given three choices when the transfer was ordered (either go to Syracuse, work at a different job with Verizon in Buffalo, or take a severance package, id. at *55), the order to transfer to an office she never appeared in was a trivial harm, see White, supra, 548 U.S. at 68, and not a material adversity that a reasonable employee would have dissuaded them from acting. Therefore, Verizon Business concludes that Plaintiff has not established a prima facie case for discrimination claim arising from the Syracuse transfer (id. at 25).

On remand and applying the Burlington Northern v. White elements to her retaliation claim, 548 U.S. at 67-70, Plaintiff established that she engaged in a protected activity and that Verizon Business was aware of that activity. There is an issue of fact on the casual relationship between the activity and the action against Plaintiff, her transfer to the Syracuse office. Neither side has argued which version of Gaglione's testimony about the motive for Plaintiff's transfer is true, the one issue the Second Circuit explicitly remanded for this Court's reconsideration, Moll, supra, 760 F.3d at 204-06. On this remand, this Court has considered all of Gaglione's presented testimony both from the initial motion as well as his post-remand deposition testimony.

Verizon Business's first motion raised the discrepancy in Gaglione's statements (compare Docket No. 114, Def. Ex. Tab 66, Gaglione EBT Tr., Moll v. Telesector Resources Group, Dec. 13, 2006, at 282-83 with Docket No. 109, Pl. Ex. S, Gaglione Decl., Nov. 4, 2011, ¶ 14; Docket No. 221, Pl. Ex. S (same); see Moll, supra, 760 F.3d at 204-06, vacating, 2012 U.S. Dist. LEXIS 74949, at *60-62). In his deposition, Gaglione testified denying that Bob Dixon was scrutinizing Plaintiff because she was not in the Syracuse office (Docket No. 114, Def. Ex. Tab 66, EBT Tr. at 282-83). Verizon Business

stated as the reason for the transfer was to centralize resources into one regional office,
see Moll, supra, 760 F.3d at 205; Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *61.  On
November 4, 2011, after he was no longer employed by Verizon Business, Gaglione
swore a declaration that

> "the primary factor for this decision [to relocate Plaintiff from Buffalo to
> Syracuse] was to retaliate against both Ms. Moll and Ms. Byrne for their
> continuing complaints of discrimination and retaliation.  Mr. Dixon and
> Mr. Van Hoesen wanted to make life as difficult as possible for Ms. Moll and
> Ms. Byrne and stated that they believed this action would force them to
> leave ESG"

(Docket No. 109, Pl. Ex. S, Gaglione Decl. ¶ 14; see also Docket No. 221, Pl. Ex. S
(same)).

Following remand, Gaglione again was deposed on May 10, 2017 (Docket
No. 216, Def. Ex. Tab 61; Docket No. 222, Pl. Ex. AAA).  The excerpts from that
deposition presented by both sides (Docket No. 216, Def. Ex. Tab 61; Docket No. 222,
Pl. Ex. AAA) gives some illumination on Gaglione's position.  There, he explained that
Dixon called and "laid out what he was doing" in reassigning staff (including Plaintiff) to
Syracuse giving what he believed was "a solid business reason for doing this" (Docket
No. 216, Def. Ex. Tab 61, Gaglione May 10, 2017, EBT Tr. at 20).  Gaglione, however,
thought "it did seem like a stretch" to him (id. at 20, 17).  While the stated reason,
centralizing operations for efficiency, see Moll, supra, 2012 U.S. Dist. LEXIS 74949, at
*61-62 (quoting Docket No. 114, Def. Ex. Tab 66, Gaglione EBT Tr., Moll v. Telesector
Resources Group, Dec. 13, 2006, at 282-83), "could be construed as a business
reasons," as Gaglione termed it (Docket No. 216, Ex. Tab 61, Tr. at 20), Gaglione said
the truth was that the transfer was made "to put a stop to the chaos and the – to get rid
of the problem" (id.). Gaglione thought this solution "created more chaos and [was] just

not a simple solution," (id. at 21) so he created his own solution (id.; see also Docket No. 222, Pl. Ex. AAA, Gaglione Tr. at 21), in effect allowing Plaintiff and others to remain in Buffalo by authorizing telework or allowing staff to hold client meetings in Buffalo.

In Plaintiff's excerpt, Gaglione explained paragraph 14 of his later statement, claiming that the transfer was in retaliation (Docket No. 222, Pl. Ex. AAA, at 74, 76-77). Relocation would make sense if the staff remained in the relocation office, but sales staff and sales engineers were out of the office at different times (id. at 74), diluting any common training. Gaglione then said that the purpose for developing "the plan" (explaining the rationale for the transfer) from Dixon's "standpoint was to get" Plaintiff and Byrne to leave his department, with Gaglione recognizing the difficulty of finding a new position within Verizon at that time (id. at 76). Gaglione opined that he thought Dixon wanted Plaintiff out from the context of his conversation with Dixon, although Dixon never expressed that he wanted to make Plaintiff's life miserable (id. at 77). Gaglione believed that Dixon's plan ultimately was "a pain in the ass. It did waste a lot of time," and he disagreed about how to handle whistleblowers (id.) such as Plaintiff. Plaintiff, however, did not point to this testimony in her latest memorandum nor did Verizon Business address Gaglione's position on the reason for the transfer.

Gaglione then testified that Plaintiff did come to the Syracuse office "but not that often" (Docket No. 216, Def. Ex. Tab. 61, at 78-79) but reaffirmed his earlier testimony that Plaintiff "never really showed up in Syracuse very often at all" and that "it was never really a hardship for her at all because she never really did it" (id. at 78), with Gaglione getting in trouble with Van Hoesen for this. It was Gaglione who suggested to Plaintiff that she make appointments in Buffalo and maximize her time there (id. at 79), but Plaintiff

41

and Mike Chase (a male Buffalo employee also transferred to Syracuse) were what Gaglione termed "rule followers" and did not fully exploit their position to work more in Buffalo to avoid travel to Syracuse (id. at 80).  After confirming his first testimony was true, Gaglione said that someone eventually would compel Plaintiff's (and Chase's) attendance in Syracuse (id.).

Plaintiff now argues that the transfer was an adverse employment action that raises a material issue of fact (Docket No. 223, Pl. Memo. at 25).  She argues that she was compelled to be in Syracuse when not on out-of-office appointments (id.).  She contends that her disability period should not be counted to benefit Verizon Business (since its actions led to the disability) to establish that she did not suffer any hardship in the required transfer to Syracuse during that same time (id.).  Finally, Plaintiff points to the timing of the transfer, in December 2004, one month after she served her Complaint in this action and months after filing her EEOC charge (id. at 26).

Thus, following remand, Gaglione's position becomes clearer.  He disagreed with the decision to transfer Buffalo staff to Syracuse.  It did not seem to make sense to him, given that their customers were in Buffalo and that their work did not tie them to a particular office to achieve whatever efficiencies in training in one central office.  Gaglione provided means for transferred staff to still work from Buffalo, with a factual question remaining of how frequently Plaintiff and other employees took advantage of it and whether Plaintiff or others faced sanction from Verizon Business management when they believed the employees should have been in Syracuse.  The change in Gaglione's employment between his depositions and statement may have some bearing on his ultimate credibility.

42

Although Plaintiff's office was transferred to Syracuse, she fails to establish that she suffered an adverse employment action from this when she was (a) given the choice of whether to transfer, change departments, or accept a severance package (see, e.g., Docket No. 109, Pl. [first] Counterstatement ¶¶ 167-72) or (b) was given flexibility by Gaglione in actual appearances in Syracuse. While Plaintiff desires this Court to discount the time while she was on disability during this Syracuse assignment, each day from August 29, 2005, when placed on disability until she was reassigned to Buffalo in February 2006 and later returned from disability is a period when she did not have an adverse employment action because she was effectively not employed (despite the source of the disability).

This Gaglione testimonial fact issue that in part led to the remand, however, need not be resolved or be found to be a basis to deny summary judgment. Plaintiff's retaliation claim arising from the transfer **fails** on the third <u>Burlington Northern v. White</u> element that the transfer was not materially adverse action that a reasonable employee would be dissuaded from engaging in protected activity. As discussed regarding discrimination, Plaintiff was initially given the choice when the transfer was announced (transfer to Syracuse; stay in Buffalo but change jobs within Verizon; or take severance). Furthermore, Plaintiff appeared for work in Syracuse but at an unstated frequency. Plaintiff either teleworked from Buffalo or had client meetings in Buffalo or was on disability until she was taken off disability and was reassigned to Buffalo. Plaintiff states in this motion that "the majority of her accounts were in the Buffalo area, and she was assigned to work on a 911 account for Erie County, the majority of her customer appointments were in Buffalo," often meeting at the clients' offices (Docket No. 221, Pl.

Counterstatement ¶ 199) but when she did not have appointments in the Buffalo area she was in Syracuse (id.; Docket No. 222, Pl. Ex. DDD, Pl. EBT Tr. at 79-82). There, Plaintiff testified that "whenever I had an appointment in Buffalo, I wasn't reporting to the Syracuse office. So I came there when I didn't have appointments," and she made sure she had Buffalo appointments (Docket No. 222, Pl. Ex. DDD, Tr. at 80). Plaintiff also explained that the 911 account for Erie County required her to going to call centers in Erie (and later Niagara) County to confirm what equipment these centers possessed prior to upgrades, with this task taking months away from the Syracuse office (id. Tr. at 80-81). Plaintiff set her own appointments and could not tell when she was in Syracuse or in Buffalo, she could not testify to a specific number of days she was at either office, although she thought she was in Syracuse "less than 20 times" (id., Tr. at 82).

In response to the first motion for summary judgment, Plaintiff asserted that she received emails from Gaglione (at Dixon's behest) and Dixon that she and Chase appear in the Syracuse office, if they had meetings in Buffalo part of the day to come to Syracuse the other part of the day (Docket No. 109, Pl. Counterstatement ¶ 178; Docket No. 109, Pl. Exs. KK, LL). In one email, on April 11, 2005, Gaglione said that he was advocating for Plaintiff to gain a new position closer to Buffalo, but asked Plaintiff be at her assigned Syracuse location "when not at off-site customer meetings and other Verizon Meetings etc." (Docket No. 109, Pl. Ex. KK). Dixon later required Plaintiff to be at her Syracuse desk 24 hours per week and restricted her client meetings to two days per week out of the office, unlike other sales engineers (Docket No. 109, Pl. Counterstatement ¶ 178; Docket No. 221, Pl. Counterstatement ¶ 193). Plaintiff later conceded that Gaglione told her to use her judgment as a manager whether to be in Syracuse or not (id. ¶ 179).

The opportunity for additional material and reconsideration of Verizon Business's summary judgment motion on remand does not change the result found by this Court in 2012, Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *54-62.  Plaintiff fails to make a prima facie case of disparate treatment and retaliation for the transfer to Syracuse.  By citing both her and Chase for the frequency of reporting to Syracuse (Docket No. 109, Pl. Ex. LL), it is not clear that the transfer was retaliatory or directed to Plaintiff merely because of her gender.  Thus, Verizon Business's motion for summary judgment on this claim is **granted**.

(2) Hockey Tickets

As for Plaintiff not receiving 2000 hockey tickets provided to male co-workers, Plaintiff filed her Equal Employment Opportunity Commission charge on or about September 19, 2003 (Docket No. 148, 2d Am. Compl. ¶ 100a.).  Three hundred days prior to the charge was November 24, 2002.  For her First (sex discrimination) and Fifth (retaliation under Title VII) Causes of Action to be timely, events prior to that date are barred, including the deprivation of 2000 hockey tickets.

For her state law Second and Fourth Causes of Action for this same instance, however, there is no 300-day rule; these claims have a three-year state law statute of limitations, Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (citing N.Y. Civ. P. L. R. 214(2)); see Pratesi v. New York State Unified Court Sys., No. 08-4828, 2010 WL 502950, at *8 (E.D.N.Y. Feb. 9, 2010) (limitations period for Human Rights Law claim tolled by pendency of complaint before New York State Division of Human Rights, citing Penman v. Pan American World Airways, Inc., 69 N.Y.2d 989, 517 N.Y.S.2d 719 (1987)).  Since it is a statute of limitations for the state claims, it is also governed by the

continuing-violation doctrine which reaches back to pre-limitation period events incidents that are part of the same unlawful employment practices and at least one act falls within the limitations period, <u>Drew v. Plaza Constr. Corp.</u>, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010); <u>see</u> <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114-15 (2002).  The 2000 hockey ticket claim therefore is timely for the state law claims, assuming this Court exercises supplemental jurisdiction over these claims.  The substantive discussion for the 2003 tickets is thus applicable to the 2000 tickets for the state Human Rights Law claims.

As for her claim regarding the 2003 hockey tickets, Irving personally purchased the tickets and offered them to co-workers willing to reimburse him.  Verizon Business argues that Plaintiff never expressed interest in acquiring these tickets.  (Docket No. 217, Def. Memo. at 18-19; Docket No. 216, Def. Statement ¶¶ 156-58.)  Plaintiff merely argues that Irving provided the list of games to other employees but not to her or Byrne (Docket No. 223, Pl. Memo. at 31).  She admits that Irving purchased the tickets with his own funds but did not offer them to her or other female employees (Docket No. 221, Pl. Counterstatement ¶¶ 157, 159).

Verizon's policy was to reimburse tickets and like expenses when an employee purchased them and used them to entertain clients (Docket No. 216, Def. Statement ¶ 158); thus, Plaintiff also could have purchased tickets as well as Irving did for customer use and reimbursement by Verizon Business.  As was held in 2012, <u>Moll</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 74949, at *5, in 2000 Plaintiff requested one time to get hockey tickets and (after she was denied) did not ask again. Plaintiff still has failed to state a <u>prima facie</u> case for this issue, <u>id.</u> at *74-75.  She never expressed an interest in purchasing tickets to entertain clients, she has not shown that she was negatively

impacted by not enjoying these opportunities, or "that such an action would reasonably dissuade a reasonable employee from filing a charge of discrimination," id. at *75. Verizon Business's motion on this point is **granted**.

    (3) Sales

   Plaintiff complains that she was deprived credit for sales she brought into Verizon that Defendant attributed to her male co-workers (Docket No. 223, Pl. Memo. at 31-32, 29; Docket No. 217, Def. Memo. at 16-17). She also complains that she was required to be the single point of contact for other clients (cf. Docket No. 217, Def. Memo. 17). Verizon Business argues that a male employee also had to be a single point of contact (Docket No. 217, Def. Memo. at 17).

   Verizon Business argues that Plaintiff failed to establish a prima facie case for two discrete instances in which she alleged that male employees took credit for sales she worked on (Docket No. 217, Def. Memo. at 16-17). Specifically, Plaintiff challenged the attribution for the Buffalo Board of Education account in 2002 (credited to Kevin Dean by Irving) (Docket No. 216, Def. Statement ¶ 120). The second instance was David Winley receiving credit that year for a $8.5 million sale Plaintiff claims she completed in 2001 (id. ¶ 122). Verizon Business argues that Plaintiff in her deposition admitted that the Board of Education account was not manipulated, and Dean was not given credit for that account (id. ¶ 121). As for the $8.5 million sale, Verizon Business contends that Plaintiff received incentive compensation for that sale, male and female employees were treated equally, and (as found by this Court for the first motion), there is no inference of discrimination (Docket No. 217, Def. Memo. at 17), Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *70-71. Verizon Business also argues that there is no inference of retaliation since these

sales occurred before Plaintiff's EEOC charge (id.).  Verizon Business also argues that Plaintiff has no retaliation claim for her removal from the University at Buffalo account in 2004 (Docket No. 217, Def. Memo. at 22), see id. at *64 (finding that Plaintiff had not stated a prima facie case).  Plaintiff also complains that Tom Spencer was assigned to be a single point of contact for certain accounts (Docket No. 216, Def. Statement ¶ 76).  She argues that she, and Byrne, were required to be single point of contact but other male employees were not (Docket No. 221, Pl. Counterstatement ¶ 76).  It is not clear whether this role is a positive or negative and the record shows that both male and female employees generally served in that position.

Plaintiff counters that Irving would manipulate sales accounting to make sure male employees met their sales targets (Docket No. 223, Pl. Memo. at 31).  Plaintiff admits that the manipulation did not occur (Docket No. 221, Pl. Counterstatement ¶ 121) but that Irving stated that he would do so and that a male employee could miss their target without consequence while Plaintiff was placed on a counseling plan for failing to respond to a business representative (id.).  She contends that the timing of the 2001-02 compensation was material for her incentive compensation and, comparatively, for her male co-workers' compensation (id. ¶ 123).  She concedes that it may not have been the intentional act of Verizon Business, but Defendant failed to correct it (Docket No. 223, Pl. Memo. at 31).

The fact that Irving intended to benefit male employees does not state a prima facie case where there is no evidence that he actually benefitted or that Plaintiff either was denied the benefit of the doubt about sales or not allowed to miss a sales target.  She admits that her counseling was for a different matter, failing to respond to a representative.  Thus, there is no inference of discrimination or retaliation from Irving's

intended action on the Board of Education account where employees were treated the same regardless of their gender and Plaintiff's claimed deprivation occurred before she filed her EEOC charges, see Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *70-71. Similarly, the late posting of the 2001 sales in 2002 had no gender distinction, id.  As for Plaintiff's loss of the University at Buffalo account and possibly not meeting her sales objective (Docket No. 223, Pl. Memo. at 29), she lost that account because she complained about the sales ethics of a co-worker.  As held for the first motion, id. at *63, "Plaintiff has not set forth a prima facie case of retaliation, because Title VII does not protect employees from retaliation for opposing misbehavior by co-workers that is unrelated to discrimination against a protected class member," id.  Therefore, Plaintiff's claims arising from sales is **denied** and Verizon Business's motion for summary judgment on this point is **granted**.

(4) Rankings

Included in this discussion is Plaintiff's complaint that she received an unwarranted counseling session in March 2002 following alleged complaints from clients that she was non-responsive and changes in quality of her work (Docket No. 217, Def. Memo. at 22-23; Docket No. 223, Pl. Memo. at 6-7, 27-28) and a negative evaluation in July 2005 that she was "least desirable" among the sales engineers (Docket No. 217, Def. Memo. at 18).

Plaintiff contends that the reasons for her counseling plan was pretext because Irving placed her in the plan after she rejected his advances (Docket No. 223, Pl. Memo. at 27).  Verizon Business counters that while in the counseling plan Plaintiff had performance evaluation that rated her meeting expectations, deemed very effective in two categories, and she received pay raises (Docket No. 227, Def. Reply at 13-14).  She was

49

on the counseling plan for two months after successfully completing it (id.; Docket No. 221, Pl. Counterstatement ¶ 87).  Verizon Business also points another male employee who was under a more formal Performance Improvement Plan (Docket No. 227, Def. Reply at 14), thus denying any retaliation (id.) or gender discrimination (Docket No. 217, Def. Memo. at 23).

Plaintiff has not countered this Court's initial finding that attendance in a counseling plan is not an adverse employment action by not establishing a loss of a tangible job benefit, Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *65 (citing cases).  Plaintiff received favorable evaluations and pay raises despite being in counseling in 2002.  She has not shown that she suffered harm from being placed in that program, id. at *65-66.  Male co-workers have been placed in more serious Performance Improvement Plan, hence removing any discriminatory or retaliatory motive to place Plaintiff in counseling plan, see id. at *66, despite the plan coming from Irving.  Again, Plaintiff fails to establish a prima facie case for this claim, id. at *67.

Verizon Business next argues that employee ranking was used as a management tool and was not used to make personnel decisions (Docket No. 217, Def. Memo. at 18).  Plaintiff points to male co-workers with what she believed had more serious performance issues (those that should have led to their termination) while she was sanctioned (Docket No. 223, Pl. Memo. at 6-7, 27-28).

Plaintiff has not established that her 2005 ranking was an adverse employment action.  As was found in 2012 for the first motion (and not strenuously contested by Plaintiff in this motion), Plaintiff has not established a prima facie case for discrimination or retaliation in her 2005 ranking.  The adverse action she originally alleged, that she

received the lower ranking to lead to her lay off during a reduction in force, did not occur. Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *81-82.  Absent an adverse employment action, Plaintiff fails to state a claim.  Verizon Business's motion for judgment dismissing this claim is **granted**.

(5) Professional Networking

In 2006 following Verizon's merger with MCI (and the establishment of Verizon Business), Mark Witte came from MCI to join Verizon and eventually supervised Plaintiff (Docket No. 216, Def. Ex. Tab 20, Witte Decl. ¶¶ 1-4, 6, 13).  Witte urged Plaintiff to develop her professional networking (id. ¶ 13; Docket No. 217, Def. Memo. at 18; Docket No. 216, Def. Statement ¶ 250).  Verizon Business argues that another male employee also was asked to meet this obligation (Docket No. 216, Def. Statement ¶ 250).

Plaintiff admits that she had this goal imposed upon her but denies that other sales engineers had the same requirement (Docket No. 221, Pl. Counterstatement ¶ 250), but she offers no evidence for this (such as testimony from the male employee Verizon Business claims also had the goal).  She contends that corporate account managers solicited business and not sales engineers, that her former manager (Gaglione) never insisted upon Plaintiff or other sales engineers to add accounts (id.).  Plaintiff does not account for the change in management from the Verizon-MCI merger.

It is unclear the harm Plaintiff alleges for being instructed to network as a salesperson.  She claims no sanction from this (either in not setting the goal or not meeting the goal), save contending that sales engineers before were not required to solicit new business (Docket No. 223, Pl. Memo. at 29).  Plaintiff fails to allege either a gender

difference (that she and other female workers were required to solicit business while their male counterparts were not) or retaliation (that she was required to perform this extra work because of her pending EEOC charges and this action).  Verizon Business has shown that another sales engineer was asked to set this goal.

In setting this customer cultivation goal, Witte wanted Plaintiff to add customer relationships to enhance her skills and exposure to customers (Docket No. 216, Def. Ex. Tab 20, Witte Decl. ¶¶ 13, 17).  When the reduction in force decision was made in 2007, Witte selected Plaintiff for reduction in part because (despite efforts to broaden her skill set) Plaintiff remained "unsophisticated, largely focused on traditional telephone services (ILEC), and her capabilities, job performance and results trailed those of other sales engineers" in Witte's group (id. ¶ 17).

There is no additional evidence from the record before this Court in 2012, Moll, supra, 2012 U.S. Dist. LEXIS 74949, at 71-72.  Plaintiff has failed to show an inference of discrimination in imposition of this performance goal and she has not established that it was "'more disruptive than a mere inconvenience or an alteration of job responsibilities,' and therefore do not rise to the level of actionable adverse employment actions," id. at *72, quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); citing Klein v. New York Univ., 786 F. Supp.2d 830 (S.D.N.Y. 2011) (professor's dissatisfaction with course assignments is not adverse employment action where she did not allege any resulting loss in wages or benefits).  Plaintiff here has not alleged any material loss due to this goal setting.

Thus, Verizon Business's motion for summary judgment on this ground also is **granted**.

(6) Alternative Worksite

Plaintiff sought to work from home or from different office spaces while assigned to the Buffalo, Syracuse, or Amherst offices (see Docket No. 223, Pl. Memo. at 11, 31; Docket No. 221, Pl. Counterstatement ¶ 202), seeking (for example) to not work in a cubicle or to work in a supervisor's office to avoid contact with alleged harassing employees (Docket No. 217, Def. Memo. at 19; Docket No. 221, Pl. Counterstatement ¶ 245), arguing that male employees were afforded this opportunity while she was not. As for the assignment to a cubicle, Plaintiff admits that male sales engineers at her rank also worked from cubicles (Docket No. 221, Pl. Counterstatement ¶ 75; Docket No. 217, Def. Memo. at 19).  Plaintiff also disputed vacation time assigned to her as opposed to male employees (Docket No. 217, Def. Memo. at 20-21).  She objected that, as the more senior employee, she should have received vacation time but on July 5, 2002, male employees received time off when she did not (Docket No. 223, Pl. Memo. at 7; Docket No. 221, Pl. Counterstatement ¶ 118; Docket No. 221, Pl. Ex. A, Pl. Decl. ¶ 65).  Much of this argument arose from the Syracuse transfer (see Docket No. 221, Pl. Counterstatement ¶¶ 190, 193, 199-202) just discussed above.  While Plaintiff was working in Buffalo, she sought the ability to work from home with limited success (id. ¶ 118 (Irving's refusal in 2002).

Verizon Business argues that Plaintiff has not established an adverse employment action from these denials of alternative worksites (Docket No. 217, Def. Memo. at 19).

As noted in 2012, the Second Circuit has not ruled whether the denial of work-from-home or telecommuting status constitutes an adverse employment action, while other District Courts have held that it is not an adverse action, Moll, supra, 2012 U.S. Dist.

LEXIS 74949, at *76-77 (citing Martinez-Santiago v. Zurich N. Am. Ins. Co., No. 07 Civ. 8676(RJH), 2010 WL 184450, at *7 (S.D.N.Y. Jan. 20, 2010) (collecting cases)), either for a substantive discrimination claim or a retaliation claim against actions that materially adverse such that it may dissuade a reasonable worker form making a charge of discrimination, see White, supra, 548 U.S. at 64, 68-69.  The Second Circuit in remanding this case did not address this issue.  Since 2012, the Second Circuit suggested that this is not an adverse action, see Dowrich-Weeks v. Cooper Square Realty, Inc., 535 F. App'x 9, 11-12 (2d Cir. 2013) (summary Order).  Plaintiff here seeks mere convenience which is not actionable as an adverse action.  Review of these facts on remand, this Court reasserts that Verizon Business's refusal to allow Plaintiff to work at the location she desired did not constitute adverse employment actions because she has not shown that Defendant's conduct materially "'affected the terms, privileges, duration, or conditions' of her employment," Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *77 (quoting Cooper v. New York State Dep't of Human Rights, 986 F. Supp. 825, 288 (S.D.N.Y. 1997)).

Verizon Business's motion for summary judgment to dismiss this claim is **granted**.  Similarly, Plaintiff's vacation deprivation claims are also **dismissed**; Plaintiff has not added to the arguments she raised in 2012.  Plaintiff still, see id. at *80, that she established an adverse action in not receiving her vacation requests or later using her vacation time to move her residence.

(7) Layoff

Plaintiff argued that Verizon Business retaliated against her in selecting her for the 2007 reduction in force, id. at *67 (Docket No. 57, Am. Compl. ¶¶ 98-99; Docket No. 110, Pl. Memo. at 22; Docket No. 223, Pl. Memo. (on remand) at 32-34; see also Docket

No. 148, 2d Am. Compl. ¶¶ 98-99).  She contends that the "smoking gun" here is the timing of the reduction relative to her pending litigation; five months after learning of this lawsuit, Witte named Plaintiff for the reduction in force (Docket No. 223, Pl. Memo. at 32).  Alternatively, Plaintiff points to "multiple questions of fact of the discriminatory and retaliatory animus behind Moll's termination" (id.).  She suggests fact of motive arise from Witte reassigning Plaintiff from Buffalo to the Amherst office prior to the reduction, with that office having Dixon, Irving, and Ray Brogan, the alleged harassers that Plaintiff wanted to avoid (id.).  Then Dixon and Irving were deposed by Plaintiff two months before the reduction (id. at 32, 33).  Plaintiff, the sole sales engineer, then was selected for termination (id. at 33).  She compared her skill set in traditional telephone services with a male employee who was retained while she was discharged (id.).  As the Second Circuit noted, Plaintiff argues that Verizon Business lacked records of the reduction in force that may indicate that the decision was pretext (id., citing Moll, supra, 760 F.3d at 204).

Verizon Business argues that Plaintiff abandoned her gender discrimination claim arising from the reduction in force in 2007 (Docket No. 217, Def. Memo. at 26), Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *67 n.8.  If still asserted, Verizon Business contends that Plaintiff has not established a prima facie case of disparate treatment or retaliation and, even if she did, that Verizon Business had a legitimate reason articulated by Defendant requires entry of summary judgment (Docket No. 217, Def. Memo. at 26-29; Docket No. 227, Def. Reply Memo. at 7-8).  Plaintiff has not responded to the fact that the total number of employees in the reduction in force were two males to every female let go or that Witte added a second (male) employee when required to add to the reduction (Docket No. 227, Def. Reply Memo. at 8).  Verizon Business argued that it produced a

spreadsheet in post-remand discovery identifying employees who were laid off in October 2007 (id., citing VER-MOLL-5389 to 5394, produced June 19, 2015; Docket No. 227, Def. Reply Tab 72 (termination papers of Steve Medve, spreadsheet)), although the spreadsheet produced with this motion has the names (save Medve's) redacted and no gender identification.  As for her retaliation claim, Witte met Plaintiff after her disability leave and he did not discuss the reduction with individuals Plaintiff had had issues with (Docket No. 227, Def. Reply Memo. at 8; Docket No. 217, Def. Memo. at 29).  Witte had assigned Plaintiff to the prestigious and highest revenue M&T Bank account, which Verizon Business argues belies her retaliation claim (Docket No. 227, Def. Reply Memo. at 8).

Witte stated that he eliminated Plaintiff's position because her skills focused on traditional telephone services rather than the "next-generation MCI products and services" (id. at 28; Docket No. 216, Def. Statement ¶ 256).  Witte used his own criteria for selecting Plaintiff's position (Docket No. 216, Def. Statement ¶ 256).  Plaintiff argues that Witte's testimony was inconsistent with that of Chris Sacco (Docket No. 222, Pl. Ex. FFF, Sacco EBT Tr. at 51-52) and Gaglione (Docket No. 221, Pl. Ex. S, Gaglione Decl. ¶ 37).  The layoffs eliminated legacy Verizon employees in favor of legacy MCI employees (see Docket No. 227, Def. Reply Memo. at 9; Docket No. 221, Pl. Counterstatement ¶¶ 257-58).  Sacco, the prior branch sales engineer manager (Docket No. 221, Pl. Counterstatement ¶ 253), testified that he did not remember the last reduction in force, but he agreed that "there should be standard criteria which are utilized when ranking and rating employees" (Docket No. 222, Pl. Ex. FFF, Tr. at 51, 52) such as performance evaluations, but there is no record Sacco had used such a criteria or whether

that was ordered by his superiors.  Gaglione, when posed with the reduction, "instructed [his] manager to rank and rate those [sales engineers] who report to me" (Docket No. 221, Pl. Ex. S, Decl. ¶ 37).  He did not indicate a company-wide ranking standard or that upper management compelled this procedure.

Plaintiff's invocation of pretext for the decision in the reduction in force does not get reached until the first two McDonnell Douglas steps are met.  To establish a prima facie case, Plaintiff needs to show that she suffered an adverse employment action and that the circumstances give rise to an inference of discrimination, with the first two elements of membership in a protected class and qualified for her position conceded (Verizon Business is not arguing that Plaintiff was reduced due to not being qualified for the job).

On her retaliation claim, Plaintiff has not established any direct evidence of a causal relationship, with this termination occurring three years after commencement of this action, despite months after depositions in this case, Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *68.  Had there been retaliation, Witte would not have assigned Plaintiff to Verizon's most valuable account.  As for gender discrimination even assuming Plaintiff has not abandoned that claims, cf. id. at *67 n.8, Plaintiff also fails to establish a prima facie case.   Verizon Business globally laid off more men than women.   Plaintiff's supervisor, Witte, first laid her off and months later (when further layoffs were required) laid off a male worker.  Witte selected those to be reduced in force on his own criteria and not on the advice of others.  Witte said he selected Plaintiff for layoff, like other legacy Verizon staff, because she was not knowledgeable of MCI technologies (Docket No. 227, Def. Reply Memo. at 9).

While this Court found in the first motion for summary judgment that Verizon Business also stated nondiscriminatory reason for the reduction in force and denied Plaintiff established that reason was pretext, id. at *68-69, the Second Circuit disagreed on the last point that Plaintiff raised a material issue of fact as to the pretextual nature of nondiscriminatory reasons for the reduction in force, Moll, supra, 760 F.3d at 204.  Since Plaintiff has not established a prima facie case in the first instance, the burden has not shifted to the other elements.  Verizon Business's motion on this claim also is **granted**.

        d.  Pay Equity Claim

Verizon Business argues that Plaintiff's work was distinct from male employees she used to compare to establish that her pay was less than theirs (Docket No. 217, Def. Memo. at 29-30).  Plaintiff counters that she performed the same work as the male sales engineers she cited in particular Tom Spencer and David Winley (Docket No. 223, Pl. Memo. at 34).  According to Plaintiff, the main distinction between sales engineer's duties is the concentration in different telecommunication areas (data systems, voice, or telephonic systems) (id. at 35).  Plaintiff's starting salary in 1997 was $47,400, while the starting salary for Spencer was $61,300 (Docket No. 223, Pl. Memo. at 35; Docket No. 221, Pl. Counterstatement ¶¶ 17, 16).

In 2012, this Court presumed that Plaintiff (on a record similar to the post-remand evidence presented in this motion) presented admissible evidence of Plaintiff performing the same job requirements as male sales engineers, Moll, supra, 2012 U.S. Dist. LEXIS 74949, at *87-88.  Plaintiff now argues that this prima facie case (Docket No. 223, Pl. Memo. at 35) distinguishing her entry salary as a sales engineer with that of Spencer's. Plaintiff, however, fails to refute the nondiscriminatory reason proffered by Verizon

Business for the discrepancy save arguing that Defendant failed to eliminate the pay gap over the next seven years (id.), Molden, supra, 11 Cl. Ct. at 613; see also Maricopa County Community College Dist., supra, 736 F.3d at 513.

Verizon Business distinguishes Molden and Maricopa County Community College District from this case because these cases do not stand for the proposition Plaintiff contends (Docket No. 227, Def. Reply Memo. at 15).    Molden involved federal Government classification of jobs, 11 Cl. Ct. At 612-13, while Maricopa County Community College District the female employee plaintiff took on greater responsibilities until she was effectively working the higher job title without the commensurate pay, 736 F.2d at 15 (id.).  Verizon Business also notes that Plaintiff did receive pay increases during her first seven years as a sales engineer that exceeded the increases given to Spencer (id.; Docket No. 216, Def. Statement ¶ 164), apparently countering her pay gap argument.  Plaintiff disagreed, reaffirming that there remained a $16,800 gap between her pay and Spencer's despite their raises (Docket No. 221, Pl. Counterstatement ¶ 164).

This Court found in 2012 Spencer came to Plaintiff's Enterprise Solutions Group after ten years of management experience with Verizon while Plaintiff came from a clerical position to become a sales engineer, Moll, 2012 U.S. Dist. LEXIS 74949, at *88 (see Docket No. 217, Def. Memo. at 30).  This Court then found legitimate, nondiscriminatory business reasons for the pay discrepancy that was due to Spencer's management experience and inducements to recruit him for the transfer as a differential based on any other factor other than sex to deny Plaintiff's Equal Pay Act claim, id. at *89.  The Second Circuit in remanding that decision made no rulings on this point.  Upon remand, the evidence has not changed.  While Plaintiff states a prima facie Equal Pay Act claim for

performing the same duties as higher paid male counterparts, Verizon Business established nondiscriminatory reasons for the difference in pay.  Plaintiff's Equal Pay Act claim is **dismissed** and Verizon Business' motion for summary judgment is **granted**.

> e.  Supplemental Jurisdiction

With the disposition of the original federal jurisdiction claims (Plaintiff's First, Third, Fifth, and Seventh Causes of Action), this Court need not exercise supplemental jurisdiction over Plaintiff's remaining Second, Fourth, and Sixth Causes of Action (pursuant to New York Human Rights Law), 28 U.S.C. § 1367(a).  Because these state law claims arise from the same nucleus of facts as the Title VII and Equal Pay Act claims, the disposal of the Title VII and Equal Pay Act claims above would have the same result for the state Human Rights Law claims alleged.  For example, as discussed above for Plaintiff's claims from alleged deprivation of hockey tickets in 2000, Plaintiff failed to state a prima facie case under Title VII and the New York Human Rights Law.  Thus, Plaintiff's remaining state law claims are **dismissed** and Verizon Business's motion for summary judgment is **granted**.

## IV.   CONCLUSION

With the dismissal of Verizon Business's counterclaims and Plaintiff's main claims, this action is **dismissed**.

## V.   ORDERS

IT IS HEREBY ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 216) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 215) dismissing the counterclaims against her is GRANTED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:        September 18, 2020
              Buffalo, New York


                                              s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge